### TERRY v. UNITED STATES.
### No. 3166.

Circuit Court of Appeals, Fourth Circuit.
June 27, 1931.

S. R. Price, of Roanoke, Va. (A. B. Hunt, of Roanoke, Va., on the brief), for appellant.

C. E. Gentry, Asst. U. S. Atty., of Charlottesville, Va., and John Paul, U. S. Atty., of Harrisonburg, Va.

Before NORTHCOTT and SOPER, Circuit Judges, and WAY, District Judge.

WAY, District Judge.

Appellant, Charles Terry, defendant, below, was jointly indicted with one Frank Ramsey for three sales of morphine hydrochloride, made in violation of the Harrison Narcotic Act (26 USCA §§ 211, 691-707). The sales were made in the city of Roanoke October 12, 18, and 22, 1928, respectively, and the indictment on which appellant was tried contained three counts.

At the trial Frank Ramsey pleaded guilty, appellant, Terry, pleaded not guilty, and was acquitted by the jury on the first and found guilty on the second and third counts, which latter counts covered the sales made on October 18th and 22d.

The testimony adduced on behalf of the government tended to establish the following facts:

In October, 1928, appellant, Charles Terry, and Frank Ramsey were taxicab drivers in Roanoke, Va., having their headquarters near the bus station at Jefferson and Railroad avenues. On the morning of October 12th, Harry Van Miller, a government informer, made arrangements with Frank Ramsey to buy from Ramsey $5 worth of morphine, and they agreed to meet at the Tenth street bridge in Roanoke that afternoon for that purpose. The bridge is in a rather remote section of the city and approximately a mile from said taxi stands. Appellant, Terry, was not present at this conversation, and his name was not mentioned.

At the appointed time, informer Miller proceeded alone in an automobile to the Tenth street bridge. About the same time Ramsey and Terry arrived at the bridge, riding in a Chevrolet sedan owned and then operated by Terry. Both Ramsey and Terry were in the front seat; Ramsey being on the right-hand side. As they approached in Terry's automobile, Ramsey waved Van Miller to come over to the right-hand side of Terry's automobile, and Ramsey and appellant, Terry, remained in the front seat of Terry's automobile. Van Miller went over to them, handed $5 to Ramsey, and in return Ramsey handed Van Miller a red-top match box containing twenty-four grains of morphine hydrochloride. Van Miller testified that while this exchange was being made he (Van Miller) dropped the $5 and remarked, "I am about to lose that $5.00;" and that appellant, Terry, replied, "Don't lose the $5.00—that is the most important part of it."

Van Miller further testified that on the morning of October 18th he met Ramsey in Jones' restaurant in Roanoke and asked Ramsey if he could let him (Van Miller) have $5 worth of morphine, to which Ramsey replied, "Why don't you take an ounce—I have just one ounce left?" that he then made arrangements with Ramsey to sell him (Van Miller) $5 worth of morphine and to deposit with Ramsey $10 on account of the ounce, and Ramsey agreed to hold the ounce until October 22d. They then agreed to meet that afternoon (October 18th) at the Tenth street bridge where the $5 quantity was to be delivered and Van Miller was to make the $10 deposit on account of the ounce. Terry was not present at this conversation, and his name was not mentioned.

That afternoon Van Miller proceeded alone in an automobile to the Tenth street bridge. As on the previous occasion, Ramsey and Terry arrived in Terry's Chevrolet automobile which Terry was again driving. Van Miller then purchased $5 worth of morphine from Ramsey and handed Ramsey $10 additional, saying, "Here is the $10.00 on the ounce, hold it." While the transaction was being consummated, both Terry and Ramsey remained sitting in the front seat of Terry's automobile, and Terry never stopped his motor. It was also agreed by Van Miller and Ramsey in the same conversation that they would again meet at the Tenth street bridge in the afternoon of October 22d for the purpose of delivering the ounce on account of which Van Miller had just made a deposit of $10. Van Miller testified that there was nothing he knew of to prevent Terry from hearing the entire conversation between him and Ramsey.

On the afternoon of October 22d, Van Miller went to the Tenth street bridge, taking with him $40 in bills, but was a little late in arriving. Ramsey arrived, again accompanied by Terry, in the automobile owned and driven by Terry. They came across the bridge, and apparently not seeing Van Miller turned back, but, when Van Miller appeared in an automobile, Terry drove to the opposite side of the road and stopped his car. Van Miller then went over to the right-hand side of Terry's car. Both Ramsey and Terry remained in the front seat of Terry's car. Ramsey handed Van Miller a can containing an ounce of morphine, and Van Miller in return handed Ramsey $40 in bills, all of which occurred in the immediate presence of appellant, Terry.

On this last occasion a number of federal and city officers, in anticipation of the sale, had stationed themselves near the Tenth street bridge, some in a house and others in an automobile, and the transaction occurred in plain view of some of these officers. Immediately after this last sale, Ramsey and Terry were arrested by the officers. Federal Agent Tyson testified that he, in making a right-hand turn, ran his car head on into appellant's automobile, jumped out, went up to Terry's automobile, found both of the doors on the left side locked, and said: "Open these doors", and that appellant, Terry, said, "I didn't have anything to do with this business," to which he (Tyson) replied, "What business?" to which Terry made no reply. Tyson further testified that when they reached the Federal building in Roanoke he started to search Terry's automobile, whereupon Terry said: "There is no use to search, you have got everything."

Appellant, Terry, testified that he had no knowledge of the morphine, that he never talked with Van Miller and did not know he was an addict, or that Ramsey was selling morphine to Van Miller, and that, had he known this, he would not have taken Ramsey in his automobile. In explanation of his action in taking Ramsey to the Tenth street bridge on the occasions in question, appellant testified that on the first occasion Ramsey represented to him that his (Ramsey's) car was broken down, on the second, that one of his (Ramsey's) drivers had taken his (Ramsey's) car out, and, on the third, that his (Ramsey's) wife had phoned him to come home; that he (Terry) locked the doors on the left-hand side of the car because his banjo was in the back of the automobile.

In substance, Terry denied any connection with or guilty knowledge of the illegal business in which Ramsey was engaged and also denied making the statements the officers testified he made at the time of his arrest. On the other hand, the contention of the government is that, while Terry did not actually make the sales on the 18th and 22d of October, he nevertheless aided and abetted Ramsey in making these sales with guilty knowledge of the illegal business in which Ramsey was engaged and is therefore guilty as a principal.

Appellant, Terry, in his appeal, presents various assignments of error, which, for brevity, may be summarized as follows:

(1) That the District Court erred in permitting informer Harry Van Miller to testify to conversations which occurred between Van Miller and Ramsey in Jones' restaurant, because said conversations were not in the presence of appellant, Terry, and were purely hearsay.

(2) That the evidence fails to show appellant, Terry, knowingly aided and abetted Ramsey in the sales of morphine by Ramsey to informer Van Miller on October 18th and 22d, 1928.

1. Did the District Court err in permitting witness Van Miller to relate in his testimony, over the objection of appellant, the conversation between Van Miller and Frank Ramsey which occurred in Jones' restaurant on October 18th in the absence of and without the knowledge of Terry?

■ The conversation objected to is as follows: "On October 18th, about 2:30 o'clock, I met Frank Ramsey at Dick Jones' Restaurant and I asked him if he could let me have $5.00 worth of drugs and Frank Ramsey said: 'Why don't you take an ounce—I have just one ounce left;' and I told Frank Ramsey that I did not have enough money at the time."

In considering this contention, it is pertinent to determine whether or not the conversation between Van Miller and Ramsey on the occasion in question and under the circumstances disclosed by the record is in fact violative of the hearsay rule.

In 3 Wigmore on Evidence, § 1768 (pages 2274, 2275), the author says:

"The true nature of the Hearsay rule is nowhere better illustrated and emphasized than in those cases which fall *without* the scope of its prohibition. The essence of the Hearsay rule is the distinction between the testimonial (or assertive) use of human utterances and their non-testimonial use. The theory of the Hearsay rule (ante, Sect. 1361) is that, when a human utterance *is offered as evidence of the truth of the fact asserted in it*, the credit of the assertor becomes the basis of our inference, and therefore the assertion can be received only when made upon the stand and subject to the test of cross-examination. If, therefore, an extrajudicial utterance is offered, *not as an assertion to evidence the matter asserted, but without reference to the truth of the matter asserted,* the Hearsay rule does not apply." (Italics supplied.)

"The prohibition of the Hearsay rule, then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted."

In 22 C. J. page 199, hearsay evidence is defined as follows: "Evidence is called hearsay when its probative force depends, in whole or in part, on the competency and credibility of some person other than the witness by whom it is sought to produce it."

See, also, 10 R. C. L. 958; 6 Encyclopedia of Evidence 443.

That the conversation between Van Miller and Ramsey, objected to, is *without* the inhibition of the hearsay rule, defined above, is apparent. It was not offered as evidence of the truth of any fact asserted in the conversation. The truth of the statement of Ramsey that he had only one ounce left was not in issue in the case. The issue was whether Terry knowingly aided and abetted Ramsey in making the illegal sales to Van Miller at the Tenth street bridge on October 18th and 22d. That those sales were made was not and, in fact, could not have been successfully denied. Ramsey pleaded guilty to making them. Appellant did not deny that the sales were made by Ramsey, but only denied guilty knowledge of and participation in the sales. The issue which the jury had to determine from all the surrounding circumstances was whether Terry, as he contended, was innocently accommodating his friend Ramsey in taking him to the bridge, or whether, as the government contended, Terry was present there aiding and abetting Ramsey in the sales of morphine. Hence, as the conversation related purely to a collateral matter and the truth or falsity of the statements or assertions in the conversation was wholly immaterial to the real issue in the case, and was in no way put in issue, it follows that the admission of the conversation did not violate the hearsay rule.

■ *Was this conversation properly admissible for any purpose?* This must be answered in the affirmative. It explained Van Miller's and Ramsey's presence at the Tenth street bridge on the afternoons of October 18th and 22d, and thereby enabled both court and jury to have an intelligent picture of the situation. The conversation was not evidence of, but merely introductory to, the transactions which admittedly took place on the 18th and 22d, respectively, and did not tend in the slightest degree to implicate Terry in the illegal business. His implication therein resulted solely from his own acts of appearing with Ramsey upon the scene on the occasions in question and under the circumstances disclosed by the evidence. The action of the District Court in admitting the conversation for the purpose of completing the picture and explaining the presence of Ramsey and Van Miller at the bridge is amply supported by the authorities.

In 22 C. J. at page 165 it is said: *"Preliminary and Explanatory Facts.* Facts whose existence is a necessary preliminary to the relevancy of evidence, such as the accuracy of a photograph, or a set of books, or the identity of a cause of action, and the like, are properly received. So also facts which are otherwise irrelevant may be admissible because, by explaining or unfolding a

situation, they establish the relevancy of evidence, or because they explain or render more certain and definite the evidence which has already been given, or substantiate an inference which might be drawn therefrom."

And in the same volume at page 168: "*Discretion of court.* The trial court has considerable discretion as to the latitude of circumstantial or collateral evidence; and it has been said that great latitude is to be allowed to circumstantial evidence."

In Tolbert et al. v. United States, 11 F. (2d) 78, 79, decided by this court in 1926, Tolbert, a prohibition agent, and one Conrad were convicted of conspiring to demand money for not informing against violators of the National Prohibition Act. Exception was taken to the action of the District Court in permitting one of the witnesses to narrate a conversation between him and some third persons, not in the presence of the defendants. In passing upon that objection, the court, speaking through Circuit Judge Rose, said: "The only two assignments of error now relied upon relate first to the admission of certain testimony over the objection of the defendants and to a passage in' the charge of the court. From what has already been said, the only important question of fact in controversy was as to whether the negroes and the Giberts were trying to bribe Tolbert not to do his duty, or whether he and Norris were seeking to extort money from them. Under these circumstances, we think *it was quite within the discretion of the trial judge to permit the witnesses on each side so to tell their story, as to make clear the sequence of events as they knew of them.* The negroes or all of them who were accessible testified as to the demands for money made upon them by the defendants. We do not see that any harm was or could have been done by allowing Albert Gibert, when on the stand, to testify that three days after the defendants found the still the negroes came to him and asked him to lend them $200 upon mortgage of some of their stock so that they could make up $300 which the defendants had demanded to drop the case. All this was followed up with testimony showing precisely what the Giberts did in consequence of this communication, all of which as has been already stated culminated in the arrest of the defendants." (Italics supplied.)

In Hoback v. United States, 296 F. 5, 9, decided by this court in 1924, objection was made by defendant to certain testimony, on the ground that it merely showed or tended to show that an accomplice had told the truth about something which did not, of itself and apart from the story, prove or tend to prove that the defendant had any part in the crime. The testimony objected to was an account of what the witness and a third person had done and said in the absence of the defendant. In the opinion by Circuit Judge Rose, speaking for the court, it was said: "Often, as would have been true in the instant case, the exclusion of all such evidence would make it hard for the jury to understand just what had taken place, and would inevitably make them feel that something had been withheld from them, which they should know. Because, in telling the whole story of the transaction under inquiry, something may be admitted to which the jury may conceivably give greater weight than in reason they should, is not to our way of thinking a conclusive reason for excluding it. We leave to the judgment of 12 men our lives, our liberty, and our property. It would seem that we should assume that the 12, or at all events some of them, have a modicum of common sense. They may, and often, have their prejudices. Sometimes from lack of legal training they may not have a clear idea of the particular thing upon which they are to pass. Under such circumstances, the trial court must exercise such power as it has to shut out evidence that may inflame their prejudices or confuse them as to the issue they are to try. To prevent waste of time, the inquiry, whatever it is, must be kept from straying too far afield. Much must be left to the sound judicial discretion of the trial judge, subject, of course, to review, but not lightly to be overruled. Certain other lines of testimony are excluded by more or less arbitrary rules, so firmly established that they may not be changed, otherwise than by legislation. We are not willing to add to their number. There is small reason for doing so in the federal courts, where the judge may assist the jury by pointing out to them what evidence before them' is pertinent to each particular issue upon which they are to pass and what is not."

2. With reference to the contention that the evidence fails to show appellant knowingly aided and abetted Ramsey in making the sales on October 18th and 22d, the most that may properly be said is that the evidence before the jury on that issue was conflicting and presented a question of fact for the jury to decide. The jury saw and heard the witnesses, including appellant, and

observed their demeanor while they were testifying. In such cases the court may not invade the province of the jury and substitute its judgment for that of the jury on the weight and credibility to be accorded to the testimony of witnesses. It is true the evidence relied on by the government is almost, if not wholly, circumstantial. The able District Judge in his charge, evidently having that in mind, cautioned the jury that "circumstantial evidence should be closely scrutinized and acted upon only with the greatest caution," and "will not justify a verdict of guilty unless it is both consistent with the defendant's guilt and inconsistent with any other reasonable hypothesis." The court's charge was fully as favorable to appellant as he had a right to demand, and this is evidenced by the fact that appellant did not note a single exception to the charge.

It may be added in this connection that the authorities cited in the brief on behalf of appellant fail to support the contention that the judgment of conviction should be reversed for want of evidence to support it. Without here reviewing all of the authorities cited by appellant, the case of Howard v. Commonwealth, 138 Va. 835, 122 S. E. 112, 113, cited in appellant's brief, will aptly illustrate the distinction between the facts in the cases cited by appellant and the facts in the instant case. Howard was charged with illegally transporting whisky in an automobile. The court in Howard's Case summarized the situation, as follows: "There is no evidence to show that Howard was an actor in transporting the whisky. He neither owned the car nor had any authority or control over the driver, nor aided or assisted Nettles in the transportation. He was a passenger, and there is no proof that he owned the whisky, ever had it in his possession, or knew it was in the car."

In the instant case appellant, Terry, did own the car in which the morphine was transported. He drove and controlled the car, and on each of the occasions in question was in such close proximity to Ramsey while the illegal sales of morphine were being consummated that it is, to say the least, hardly reasonably conceivable that he did not hear what was said and see what took place, and, if the jury believed the testimony of witnesses Tyson and Van Miller, as it had a right to do, statements made by appellant, Terry, strongly indicate that he had guilty knowledge of the illegal business in which Ramsey was engaged.

For the reasons herein expressed, it is our conclusion that the judgment of the District Court should be, and the same hereby is affirmed.

Affirmed.