**UNITED STATES v. LEWIS (two cases).**
Nos. 7111, 7112.

Circuit Court of Appeals, Seventh Circuit.
Feb. 9, 1940.

Rehearing Denied March 15, 1940.

Writ of Certiorari Denied May 20, 1940.

See 60 S.Ct. 1077, 84 L.Ed. ——.

Julian C. Ryer, of Chicago, Ill., for appellants.

Val Nolan, U. S. Atty., and B. Howard Caughran and Paul A. Pfister, Asst. U. S. Attys., all of Indianapolis, Ind., for appellee.

Before MAJOR, TREANOR, and KERNER, Circuit Judges.

TREANOR, Circuit Judge.

Defendant-appellants were prosecuted in the District Court under an indictment charging violation of a section of the so-

462

called White-Slave Traffic Act.[1] The trial before court and jury resulted in a verdict of guilty, and judgment and sentence were rendered thereon. From the judgment defendants prosecute this appeal.

Each of the three counts of the indictment charged that the defendants unlawfully, wilfully, knowingly, and feloniously caused to be transported in interstate commerce from a point in Indiana to a point in Illinois a girl "with the unlawful and felonious intent and purpose then and there on the part of" the defendants that the girl should within the state of Illinois "engage in an immoral practice, to wit, prostitution and debauchery, contrary to the form of the statute in such case made and provided * * * ."

Defendants contend that the indictment is legally insufficient and in support of this contention urge that the indictment does not set out the necessary elements of the offense which is charged therein, and that the language of the indictment is so ambiguous as to leave in the minds of the accused persons, and of the court, doubt as to the exact offense intended to be charged.

The section of the act in question defines several offenses, but it is clear that the allegations of each count of the indictment exclude all offenses under the act except the one defined in the following language: "Any person who shall knowingly transport or cause to be transported, or aid or assist in obtaining transportation for, or in transporting, in interstate or foreign commerce, or in any Territory or in the District of Columbia, any woman or girl for the purpose of prostitution or debauchery, or for any other immoral purpose," etc.

The language of the indictment quoted above could have been intended to charge only the foregoing offense, and if the allegations sufficiently disclose the essential elements of that offense the indictment is not defective.

█ The essential elements of the offense as defined in the statute are (1) knowingly transporting in interstate commerce a woman or a girl (2) for the purpose of prostitution or debauchery or for any other immoral purpose. The allegations that the defendants wilfully, knowingly and feloniously caused a girl to be transported in interstate commerce from Indiana to Illinois "with the unlawful and felonious intent and purpose" that the girl should "engage in an immoral practice, to wit, prostitution and debauchery, contrary to the form of the statute," sufficiently follow the language of the statute, and effectively charge, in the words of the statute, the transportation of a girl "for the purpose of prostitution or debauchery, or for any other immoral purpose." Federal court decisions have held that the words "other immoral purpose" do not add an element to the offense and that "no proof could be offered of any immoral purpose, except such as are specifically mentioned, to wit, prostitution and debauchery."[2] The form followed in the instant indictment is consistent with the foregoing, since the more general term, "immoral practice" is limited by the more specific language "prostitution and debauchery."

█ It is true that it is not always sufficient to charge an offense in the exact language of the statute; but it is sufficient "if such language is, according to the natural import of the words, fully descriptive of the offense."[3]

██ The language of the statute and of the indictment, as construed by judicial decisions, is sufficiently definite to adequately describe the offense which the statute defines. Under the decisions the terms "debauchery" and "immoral purpose", by reason of association with the term "prostitution", have been restricted in meaning to immorality consisting of sexual debauchery; and as thus limited by judicial decisions the language of the statute furnishes a sufficiently definite description of the condemned conduct. Furthermore, there is transportation "for the purpose of prostitution or debauchery, or for any other immoral purpose" if there is transportation of a female for the purpose of having her "engage in acts which tend ultimately to lead to that form of debauchery or immoral conduct which consists in 'sexual actions.' "[4]

Defendants urge that the verdict is contrary to the evidence and that this court should direct a verdict for the defendants; and in support of the foregoing the defendants insist that the evidence does not

---

[1] 18 U.S.C.A. § 398, June 25, 1910, c. 395, § 2, 36 Stat. 825.

[2] United States v. Hobbs, D.C., 287 F. 157.

[3] Potter v. United States, 155 U.S. 438, 444, 15 S.Ct. 144, 146, 39 L.Ed. 214.

[4] Burgess v. United States, 54 App.D. C. 71, 294 F. 1002, 1004.

show the commission of the crime defined by the statute and utterly fails to show the presence of any wrongful intent or immoral purpose in the transportation of the girls.

The evidence discloses beyond question that the defendants caused the girls to be transported in interstate commerce from a point in Indiana to a point in Illinois. It is clear from the evidence that the purpose of the transportation was to enable the defendants to continue to make use of their services in defendants' shows. The factual question is whether the conduct and activities of the girls under the surroundings and conditions of their employment were such that defendants' transportation of them with the purpose of having them continue such conduct and activities under the same conditions and surroundings constituted a transporting of them "for the purpose of prostitution or debauchery, or for any other immoral purpose."

■■ It is well settled by decisions that the offense charged in the instant indictment does not include as a necessary element an intent or purpose that the transportation be attended by, or followed by, actual participation in sexual acts. "Transportation for prostitution, debauchery, or immoral purposes, all relate to the single purpose of the act, which is the suppression of traffic of women and girls with a view of having them engage in acts which tend ultimately to lead to that form of debauchery or immoral conduct which consists in 'sexual actions.'"[5] In Athanasaw & Sampson v. United States[6] the Supreme Court discussed and approved instructions of the lower court which were given in a case involving the White-Slave Act. In its instructions the District Court told the jury that the indictment contained no allegation that the defendants had transported the girl "with the purpose or with the intent to debauch her;" and that the term "debauchery," as used in the statute, carried the "idea of sexual immorality;" that the term had "the idea of a life which will lead eventually or tends to lead, to sexual immorality." The Supreme Court pointed out that the instructions did not make the guilt of the defendants "depend upon having the intent themselves to debauch the girl or to intend that someone else should do so;" and that "in the view of the [trial] court the statute had a more comprehensive prohibition, and was designed to reach acts which might ultimately lead to that phase of debauchery which consisted in 'sexual actions.'" The Supreme Court further stated that "granting the testimony to be true, of which the jury was the judge, the employment to which she was enticed was an efficient school of debauchery of the special immorality which defendants contend the statute was designed to cover."

■ If the employment for which the defendants engaged the girls in the instant case and the influences with which they surrounded them tended "to induce" them to give themselves up "to a condition of debauchery which eventually and naturally would lead to a course of immorality sexually," it follows from the Athanasaw decision that defendants committed the offense charged in the indictment, since it is clear from the evidence that they transported the girls for the purpose of having them continue the employment under the influences and circumstances which characterized their services and activities with defendants' shows in Indiana.

The three girls whose transportation was the basis of the prosecution of the defendants were employed by the defendants to take part in public exhibitions which defendants furnished as a part of the entertainment features of a traveling carnival. The theme of the exhibition in which the girls took part was essentially sex, and its medium of expression was nudity accompanied by words and pantomime which emphasized sexual action. One of the girls was 14 years of age and the other two were each 15 years of age. The 14 year old girl testified that in one act "there was a woman procurer who was looking for a girl to take to a house of prostitution," that another act was an "over sexed girl" that "another one was a White Slavery Act." She testified that the girls were in the nude in one act of the White Slave exhibition and that she was in the nude "in the modernistic revue, the hootch show." This same girl also testified that the defendants told her that if she was "going to have relations with men why not find somebody that can pay you something for it;" and the girl further testified that she "had relations with more than one person, also with John Norton," a defendant who has not appealed.

---

[5] Burgess v. United States, supra.

[6] 227 U.S. 326, 33 S.Ct. 285, 287, 57 L.Ed. 528, Ann.Cas.1913E, 911.

The testimony of the 15 year old girls corroborated the foregoing testimony as to the type of exhibitions in which they took part. One testified that one of the defendants made dates for her and told her to "charge three dollars and not less;" this witness also testified that she did not accept these dates. She further testified that she "had sexual intercourse with some person who worked about the carnival grounds." Also she testified as to the details of one of her exhibitions which was an act of grossest indecency and which, she stated, was taught to her by one of the defendants. The other 15 year old girl testified that she had sexual relations with a boy "who was working on the grounds;" but that neither of the defendants had talked to her about having relations with men or associating with men.

■ In the instant case, as in the Athanasaw case, the indictment contains no allegation that the defendants transported the girls with the purpose or with the intent to debauch them; and their guilt does not depend upon their having the intent themselves to debauch the girls or to intend that someone else should do so. But here, as in the Athanasaw case, the deciding question, apart from the fact of transportation, is whether the circumstances, surroundings and influences to which the employment subjected them tended to induce them to give themselves up "to a condition of debauchery which eventually and naturally would lead to a course of immorality sexually." Consequently, the immaturity and inexperience of the girls were material facts for the consideration of the jury. If, instead of immature and inexperienced girls the defendants had been charged with transporting mature women, who had had experience in public exhibitions of the type involved in this case, the jury necessarily would have taken that into consideration in deciding whether the employment with its surroundings and influences would have tended to induce them to give themselves up to a condition of debauchery "which eventually and naturally would lead to a course of immorality sexually." And in this connection it should be noted that the defendants insist that their exhibitions were intended to be educational and to show the disastrous effects of immoral conduct. But the significant thing for purposes of this prosecution is not the intended, or even actual, effect upon the spectators, but the effect upon the three girls who were used in the performance of the exhibitions.

■ In the Athanasaw opinion the Supreme Court stated that the trial court "put it up to the jury to consider whether the employment to which the defendants called the girl and the influences with which they surrounded her tended 'to induce her to give herself up to a condition of debauchery which eventually and naturally would lead to a course of immorality sexually.'" The Supreme Court approved the instructions in the Athanasaw case and we think that the problem of the jury in that case was substantially the same as that of the jury in the instant case. And granting the truth of the testimony of witnesses which was favorable to the verdict of the jury, we cannot say that there was not sufficient evidence to sustain it; since such evidence was sufficient to have justified the jury's finding that the nature of the services of the girls required by their employment and the influences with which they were surrounded tended to induce them to give themselves up "to a condition of debauchery which eventually and naturally would lead to a course of immorality sexually;" and that the employment was "an efficient school of debauchery of the special immorality which defendants contend the statute was designed to cover." Athanasaw v. U. S. Supra.

The judgment of the District Court is affirmed.