**UNITED STATES of America**

v.

**Harold SAPPERSTEIN, Anne Sapperstein, and William Michael Austrew, also known as Bill Davis.**

**Crim. No. 24648.**

United States District Court
D. Maryland.
Oct. 11, 1961.

See also U. S. v. Austrew, 190 F. Supp. 632.

**148**

Joseph D. Tydings, U. S. Atty., John G. Underwood, Asst. U. S. Atty., and Carl J. Lorenz, Jr., Asst. U. S. Atty., Baltimore, Md., for plaintiff.

William F. Mosner, Towson, Md., for defendants Sapperstein.

THOMSEN, Chief Judge.

The indictment in this case charges Harold Sapperstein, his wife Anne, and William Austrew, alias Bill Davis, with four violations of the Mann Act. Following closely the language of the statute, the first and second counts charge violations of 18 U.S.C.A. §§ 2421 and 2423 respectively, in connection with the transportation of girls known as Shirley Monroe and Betty McLean; the third and fourth counts charge violations of 18 U.S. C.A. §§ 2421 and 2422 in connection with the transportation of Dora Heathcote. All of the counts refer also to the aiding and abetting section, 18 U.S.C.A. § 2.

On motion of the defendant Austrew, the case against him was severed for trial and the case against the Sappersteins was tried before the court without a jury.

The following facts are found from evidence in the case other than the statements of Mr. and Mrs. Sapperstein, each of which is admissible only against the defendant who gave it.

Calumet City, Illinois, a suburb on the south side of Chicago, harbors many night clubs and similar establishments, one of which, the Derby Club, provides liquor, strip dancing and other provocative entertainment, with facilities for sexual intercourse on the premises. The Derby Club is owned by Amos Amadio and managed by the co-defendant Davis.

Anne Sapperstein was employed there in July 1957 as a B-girl, while her husband, who had been unsuccessful in business, cared for the children and lived off her earnings. Sapperstein wanted financial help from Amadio in a new business venture and, therefore, when the Sappersteins came to Baltimore in early July 1957 for personal reasons they readily acceded to the suggestion of Amadio and Davis that they procure a number of girls

for employment at the Derby Club. Sapperstein testified that Davis told him that a good girl of the type desired was worth $125 per week, plus a commission of 35% of money spent by her patrons, and that Sapperstein was to receive the difference between those figures and whatever lower wages and commissions the Club actually paid the girls.

Although the testimony at the trial was to the effect that the Sappersteins did not tell the girls they would be expected to engage in prostitution, but led them to believe that they would be dancers and B-girls, the evidence, apart from the signed statements of Mr. and Mrs. Sapperstein, justifies, if it does not require, the inference that they induced the girls to go to Calumet City with the intention that they should engage in prostitution in connection with their duties as B-girls. All B-girls are not prostitutes, but the terms are not mutually exclusive. It appears from the evidence that B-girls and dancers in some places are paid a salary and a commission on the drinks they persuade the men to take, without engaging in prostitution. The evidence shows that many if not all of the B-girls at the Derby Club engaged in prostitution and were expected so to engage. The signed statements made by each of the Sappersteins leave no doubt that they knew the girls were wanted at the Derby Club for purposes of prostitution.

The Sappersteins persuaded Dora Heathcote to go to Chicago on July 11, 1957, and persuaded Shirley Monroe, a sexually precocious girl not then fifteen years of age, and another girl known as Betty McLean, to go on July 13. On the latter day, the plane was forced to land in Milwaukee, Wisconsin, rather than in Chicago. In each instance, Sapperstein telephoned Davis and arranged for him to meet the girls, and in each case Davis sent Sapperstein by Western Union money order $100 to cover the plane tickets and other incidental expenses. The girls traveled on the common carriers (airlines) mentioned in the indictment, and were met by Davis, who promptly explained to them that their duties were intended to include prostitution.

Dora Heathcote worked one night at the Derby Club and refused to work any longer. There is no evidence as to what Betty McLean did after she arrived in Calumet City. Shirley Monroe began to work at the Derby Club a few days after July 13. During her employment at the Derby Club she performed a dance, described by the witness Zacharewich, in which, after stripping, she indulged in certain lewd acts which were immediately sexually provocative to the male patrons of the Club. She also engaged freely in prostitution every night she worked there.

The statement of Harold Sapperstein was given to the F.B.I. because he was angry with Amos Amadio for having assaulted him; it was obtained without any threats or promises. It stated, in vulgar language, the type of girl that Amadio and Davis wanted and the fact that commissions would be paid on the money the girls made regardless of how they made it. The statement also described the lewd dance which Shirley Monroe performed.

The statement of Anne Sapperstein was also given voluntarily. She stated that she started working at the Derby Club for Bill Davis, manager, and Amos Amadio, owner, in May 1957. She said that her duties at the Derby Club were to solicit drinks from the customers, to serve drinks to the other girls entertaining customers in the back room, to "roll" customers who had become intoxicated, to pick the pockets of customers who were having intercourse, to sell prophylactics, and to get money from customers on the promise of intercourse with them. She said, however, that she had never engaged in an act of prostitution herself, although she admitted having witnessed such acts at the Derby Club. She also indicated very clearly the type of girl Bill Davis wanted, that he wanted the girls for purposes of prostitution and that if she could get one who could dance, "all the better".

Defendants objected to the admissibility of the statements on the ground that the corpus delicti had not theretofore been proved. There is no merit in that objection. See Masse v. United States, 5 Cir., 210 F.2d 418, 420, certiorari denied 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105; United States v. Washington, D. Md., 69 F.Supp. 143, 146, Chesnut, J.

■ Defendants contend that the government failed to prove that the dominant motive of the transportation was prostitution, debauchery or other immoral activities. Although Mortensen v. United States, 322 U.S. 369, at page 374, 64 S. Ct. 1037, at page 1040, 88 L.Ed. 1331, indicates that the proscribed activities must be *the* dominant motive, later cases make it quite clear that it is sufficient if prostitution is *a* dominant motive. Simon v. United States, 4 Cir., 145 F.2d 345; Nunnally v. United States, 5 Cir., 291 F.2d 205; Masse v. United States, supra; Bush v. United States, 9 Cir., 267 F.2d 483, at page 485. In any event, I find as a fact that prostitution was *the* dominant motive for the transportation of the three girls involved in the case at bar.

■■ It is true, as defendants argue, that the intent to transport for illegal purposes must exist at the time the transportation takes place. Harms v. United States, 4 Cir., 272 F.2d 478, at page 481, certiorari denied 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed.2d 543. The evidence in the case at bar meets this requirement. Proof of intent to violate the Mann Act may be supported by evidence of the character of the place of employment of the victims and other circumstances relating to the employment. And the purpose of the interstate transportation may be inferred from the conduct of the parties within a reasonable time after the actual transportation. Athanasaw v. United

States, 227 U.S. 326, 33 S.Ct. 285, 57 L.Ed. 528; Pine v. United States, 5 Cir., 135 F.2d 353, certiorari denied 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 1079; United States v. Marks, 7 Cir., 274 F.2d 15.[1]

■ Defendants objected to the testimony of Dora Heathcote and Shirley Monroe as to what Bill Davis told them shortly after they arrived in Illinois about the duties which were expected of them. There is no merit in defendants' contention that this testimony was inadmissible as hearsay. Wigmore on Evidence, 3d ed., Vol. VI, §§ 1766, 1770, 1772, 1789; McCormick on Evidence, 1954 ed., ch. 25, § 228, pp. 463 et seq. The evidence was offered not to assert the truth of the statements made by Davis, but to show the intent of the Sappersteins in arranging the transportation. Atlanta Corp. v. Olesen, S.D.Cal., 124 F. Supp. 482, at page 487; Hilliard v. United States, 4 Cir., 121 F.2d 992, at page 997; United States v. Lewis, 7 Cir., 110 F.2d 460, at page 463; Athanasaw v. United States, 227 U.S. 326, at page 329, 33 S.Ct. 285, at page 286. Sapperstein had notified Bill Davis that the girls were on their way and had used the money Bill Davis sent to buy tickets for the girls. When several persons are jointly indicted for the commission of a crime and it is proved that they acted in concert to accomplish their end, evidence of declarations as well as acts of each in furtherance of the criminal design is admissible against all, even though conspiracy is not formally charged. See Hilliard v. United States, supra, 121 F.2d at page 999. See also Carpenter v. United States, 4 Cir., 264 F.2d 565, at page 572.

■■ The fact that Dora Heathcote did not engage in prostitution after arrival at Calumet City does not require acquittal on the third and fourth counts. The crime is committed by the transpor-

---

1. See also Van Pelt v. United States, 4 Cir., 240 F. 346; United States v. Reginelli, 3 Cir., 133 F.2d 595, certiorari denied 318 U.S. 783, 63 S.Ct. 856, 87 L. Ed. 1150; Jarabo v. United States, 1 Cir., 158 F.2d 509; United States v. Lewis, 7 Cir., 110 F.2d 460, certiorari denied

310 U.S. 634, 60 S.Ct. 1077, 84 L.Ed. 1404; Neff v. United States, 8 Cir., 105 F.2d 688, at page 691. Cf. United States v. Amadio, 7 Cir., 215 F.2d 605, reversed per curiam 348 U.S. 892, 75 S.Ct. 218, 99 L.Ed. 701.

tation for illegal purposes; it is not necessary that the purpose be accomplished. Athanasaw v. United States, supra; United States v. Marks, supra. Although two girls were named in the second count and only the age of Shirley Monroe was proved to be under eighteen, that is not a fatal variance. Bennett v. United States, 227 U.S. 333, at pages 338–339, 33 S.Ct. 288, at page 289, 57 L.Ed. 531.

The evidence proves beyond a reasonable doubt that defendants Harold Sapperstein and Anne Sapperstein were guilty as charged in all four counts.