Jerrold Orland **CONAWAY** and Lewis J. **Ritacco**, Appellants,

v.

**UNITED STATES** of America, Appellee.

No. 17894.

United States Court of Appeals Eighth Circuit.

Aug. 24, 1965.

Rehearing Denied Sept. 17, 1965.

908

Paul A. Skjervold, Minneapolis, Minn., made argument for appellants and filed brief.

Sidney P. Abramson, Asst. U. S. Atty., Minneapolis, Minn., made argument for appellee and filed brief with Miles W. Lord, U. S. Atty., Minneapolis, Minn.

Before JOHNSEN, VOGEL and MATTHES, Circuit Judges.

VOGEL, Circuit Judge.

Lewis J. Ritacco and Jerrold Orland Conaway were indicted by a grand jury and charged with having violated 18 U.S.C.A. § 2314:

> "Whoever transports in interstate or foreign commerce any goods, wares, merchandise, securities or money, of the value of $5,000 or more, knowing the same to have been stolen, converted or taken by fraud;
>
> \* \* \*
>
> "Shall be fined not more than $10,-000 or imprisoned not more than ten years, or both",

in that

> "On or about the 6th day of December, 1962, [they] did transport from Minneapolis, in the State and District of Minnesota to the City of Harrisburg, State of Pennsylvania, a collection of coins of the value of $20,000, and they then knew the said collection of coins to have been stolen."

Upon a jury verdict of guilty as to both defendants and denial by the District Court of motions for a new trial, this appeal was perfected.

But two claims of error are presented here. It is contended first that the jurisdictional amount of $5,000 was not shown and, second, that certain hearsay evidence was improperly admitted as to the meaning of a sworn statement made in a prior state court prosecution.

Roger Lanns, a coin collector, had accumulated an extensive coin collection which he generally kept in eight safety deposit boxes at his bank. Lanns lived in Minneapolis, Minnesota, in a home shared by him with his mother. At the time in question he had removed about one-fourth of his coin collection from the bank to his home for the purpose of

marking and recording it. On Sunday, November 25, 1962, during the absence of Lanns' mother from the city and while he was engaged in his regular work as a mailer for a newspaper, the house was broken into and the one-fourth of his coin collection was stolen. Lanns immediately reported the theft to the Minneapolis Police Department and thereafter called the Coin World, a nationally distributed weekly newspaper published in Sidney, Ohio, and known generally in the coin collecting field, to advise of the theft of part of his collection and to give a description thereof in the hope that the publicity might help him in recovering the stolen property. Partially as a result of the publicity given to the theft and description of the coin collection in the Coin World, the appellants herein were arrested on December 7, 1962, while attempting to sell a quantity of rolls of 1955-"S" BU pennies at Loser's Coin Store in Harrisburg, Pennsylvania. Appellant Conaway, identifying himself as "Lester Toll" or "Lester Tolle" from Kasmir, North Dakota, was offering to sell some 300 rolls of 1955-"S" pennies for approximately $27 per roll. It was established that on that date the coins had a market value of $35 per roll retail and $30 or $31 wholesale. It was also established by the government that appellant Ritacco was in the Minneapolis area on November 25, 1962, the date of the theft, and that on November 26, 1962, he was seen taking several suitcases from a 1962 Pontiac vehicle which he owned to his apartment in St. Paul, Minnesota. It was shown on December 5, 1962, or early on December 6, 1962, Ritacco left St. Paul in a 1962 Pontiac vehicle, subsequently being apprehended at Harrisburg, Pennsylvania, in company with appellant Conaway. At the time of the arrest Ritacco's 1962 Pontiac automobile was searched and additional coins were found.

Shortly after appellants had been apprehended Lanns made a trip to Harrisburg, Pennsylvania, where he examined the coins which had been found in possession of the appellants. At that time he positively identified a 1923 Denver $20 gold piece with a black mark on the back of it and two rolls of 1960 Philadelphia small date pennies dipped in wax in a method used peculiarly by him. Lanns also recognized various similarities between other rolls of coins stolen from his home and the rolls he examined. For example, Lanns recognized a coin roll that had been half filled with dimes and half filled with Liberty Head nickels. Some of the 1955 coins appellants attempted to sell apparently had been rewrapped differently from the way Lanns had wrapped his coins, but in the new wrappings wax similar to that which he had used to seal his rolls was found. Lanns could not positively identify all of the coins as his own and, in fact, one 1961 Irish coin set and one or two other items were definitely not stolen from him. However, with these few exceptions, all coins possessed by appellants were of the same kind and of equal or lesser quantity than those stolen from Lanns.

During the trial it was disclosed that the defendants had previously been prosecuted in the state courts of Minnesota on a charge of knowingly and intentionally receiving stolen property of the value of $4,000 on or about December 2, 1962, from a person unknown and that such property consisted of coins described as having been stolen from Roger Lanns' home by an unknown person. Appellants entered a plea of guilty to the state charge. The charge in the state court was based upon a complaint signed by Roger Lanns in which there was an assertion by Lanns that the value of the coins stolen from him was $4,000.

The appellants did not testify and offered no witnesses on their behalf.

■ Appellants' first contention is that the government failed to identify a sufficient number of coins in appellants' possession as being from the Lanns collection so as to hold them criminally responsible under 18 U.S.C.A. § 2314, which statute is limited to the transportation of stolen property in interstate commerce having a value of $5,000 or more.

■ We disagree. We think that the testimony offered by the government was sufficiently substantial to justify the jury in finding, as they obviously did, that the coins which the appellants possessed and were attempting to sell in Harrisburg, Pennsylvania, were those stolen from Roger Lanns' home on November 25, 1962. The circumstances surrounding the attempted sale at considerably under the market value of the coin collection, the fact that appellants parked their Pontiac automobile with its Minnesota license plates at some distance from the coin shop to conceal their true identity, and the use of a fictitious name by appellant Conaway justified the jury in drawing the conclusion that the appellants knew the coin collection had been "stolen, converted or taken by fraud". To hold the government to a degree of proof where it would be necessary to identify each and every coin possessed by appellants as being definitely stolen from the Lanns collection would be to demand the utterly impossible. It requires no citation of authority to affirm the proposition that in a criminal case an appellate court must take that view of the evidence which is most favorable to sustaining the jury verdict and that all inferences to be drawn from the testimony which tend to support the jury's findings must be accepted as established.

Appellants cite and rely on Karn v. United States, 9 Cir., 1946, 158 F.2d 568, 11 Alaska 225. Therein was involved a question of the identity of stolen currency. The government established that one soiled $10 bill had been part of money stolen from a bar in Fairbanks, Alaska, and that a soiled $10 bill was found with other currency in possession of the appellant Karn. Thereby the government sought to establish the identity of the money and the fact of the theft by Karn. In reversing a conviction and directing dismissal, the Ninth Circuit said at pages 571–572:

"The only attempt made by the prosecution to directly link the money found in appellant's possession at the time of his arrest with the money stolen from the Chena Bar was by the testimony of witness Hill. His attempted identification of the soiled ten dollar bill found in the possession of appellant as one that was in the cash register of the Chena Bar on the night of the theft was so vague and unsatisfactory as to create a reasonable doubt that the said bill was a part of this Chena Bar money. The bill was soiled, but so much may be said of a lot of paper money. * * * A bare assertion that property in the hands of accused is 'similar property' or property that 'looks like it', is not sufficient to establish such property as the stolen property."

Here the evidence presented is more than a bare assertion and the jury could find, beyond a reasonable doubt, that the coins in appellants' possession were stolen from Lanns. Furthermore, the Karn opinion later came under criticism by the Ninth Circuit itself in Kaplan v. United States, 9 Cir., 1964, 329 F.2d 561. Therein the court repudiated some of its former statements in Karn when it said at page 563:

"Karn v. United States, 9 Cir. 1946, 158 F.2d 568, a charge of larceny, where under Alaskan statutes this court found no 'competent and substantial' evidence to convict, and so reversed. In doing so, it followed the old rule that in order to convict, inferences that may be drawn from circumstantial evidence

'* * * must not only be consistent with a defendant's guilt, but inconsistent with every reasonable hypothesis of innocence. The evidence should be required to point so surely and unerringly to the guilt of the accused as to exclude every reasonable hypothesis but that of guilt.'

"These are brave words, but do not represent the present law. As we have frequently and recently pointed out in Byrnes v. United States, 9 Cir., 327 F.2d 825, note 5a, and Woxberg v. United States, 9

Cir., 329 F.2d 284 (No. 18805, decided Mar. 12, 1964), this rule was disapproved by the United States Supreme Court in Holland v. United States, supra, 348 U.S. [121] pp. 139–140, 75 S.Ct. [127] p. 137, 99 L.Ed. 150. Cf. also Remmer v. United States, 9 Cir. 1953, 205 F.2d 277, 278, reversed on other grounds, 347 U.S. 227, 74 S.Ct. 450, 98 L.Ed. 654 and many other recent cases from this Circuit. The view urged upon us is not the law. The current correct test is whether 'reasonable minds could find that the evidence excludes every hypothesis but that of guilt.' "

Judge Nordbye's statement in his Memorandum Opinion denying appellants' motion for judgment of acquittal or in the alternative for a new trial is pertinent on the matter of identity of the stolen coin collection. He stated:

" * * * There was ample evidence to sustain the finding of the jury that the coins found in the possession of the defendants in Harrisburg, Pennsylvania, on December 7, 1962, were at least a part of the coins stolen from Lanns in Minneapolis on November 26, 1962. Among the coins stolen from Lanns, there were some 287 rolls of 1955 'S' pennies and some 20 rolls of 1954 'S' pennies. At the time of the robbery, these coins were packed in plastic tubes sealed with masking tape and wax. Also, among the coins stolen, were Government Exhibit 2, a $20 gold piece; Government Exhibit 3, a roll of Philadelphia small date pennies; and Government Exhibit 4, another roll of 1960 Philadelphia small date pennies. These exhibits were in the possession of the defendants at Harrisburg when they were arrested, and were positively identified by Lanns as part of his stolen collection. Undoubtedly, the reason that Lanns could not positively identify the 1955 'S' and 1954 'S' pennies was due to the fact that after these coins had been stolen, someone had repacked them. Because there were a large number of 1955 and 1954 'S' pennies in existence in the United States, Lanns could not positively identify these coins in that the repacking and handling made positive identification impossible. However, there were other means of identification which supported the Government's contention that the 1955 'S' and 1954 'S' pennies found in Harrisburg were from Lanns' collection. The pieces of wax and masking tape found among the coins in the defendants' possession similar to that used by Lanns lend strong credence to the Government's position in this regard. In addition, the number of coins found in the defendants' possession at Harrisburg, their mintage date, the Philadelphia mint proof sets, a tube with a mixture of Liberty Head nickels and dimes similar to the way Lanns had packed them, and other circumstances, strongly support the Government's position that the great bulk of the coins found in the possession of the defendants in Harrisburg were the coins stolen from Lanns in Minneapolis."

The record here fully supports Judge Nordbye's statement.

Of course, it is perfectly clear that in order to establish a violation of 18 U.S.C.A. § 2314 the government also had to show the value of the stolen property transported in interstate commerce to be $5,000 or in excess thereof. This showing was made. Sergeant James Walsh of the Pennsylvania State Police, a criminal investigator in the Criminal Division of the State Patrol, an amateur coin collector and member of many numismatic associations, an author in the coin collecting field, and an appraiser of rare coins on a part-time basis, estimated the retail value of the recovered collection at approximately $20,000. Walsh set the wholesale value of the collection at a minimum of $8,515. Howard J. Hauser, an independent coin collector

of some years' experience, estimated the fair market value of the recovered coins in an undamaged state at $12,196.75. Appellant Conaway himself offered to sell about 300 rolls of the coins at a price of $27 per roll.

Appellants rely principally on Backum v. United States, 4 Cir., 1940, 112 F.2d 635. In that case there simply was a failure on the part of the government to establish a valuation of $5,000 or more. There all of the property found in Zucker's (a co-defendant) possession was not shown to have been stolen. Six witnesses identified portions of the recovered silverware as presumably their own and set the combined value as being less than $5,000. A government witness set the value of the identified portion in excess of $5,000. The court found, however, that the witness had not been shown to be an expert in connection with the value of silverware and stated at page 639:

> "* * * His general statement as to value, under such circumstances, was not of a sufficiently substantial character to take the case to the jury as involving the statutory amount, in the face of the specific lower valuations placed upon the stolen articles by their owners."

We consider the case of no support for the appellants' contention herein and think the government clearly established a value in excess of the statutory minimum of $5,000.

Appellants' second claim of error is that hearsay evidence was improperly and prejudicially admitted when Philip J. Bloedel was permitted to testify as to the meaning of a sworn statement signed by Roger Lanns. It was shown that in the state court prosecution against these appellants Lanns had signed a complaint wherein he stated that the value of his stolen coins was $4,000, which amount, of course, would be insufficient to establish jurisdiction under 18 U.S.C.A. § 2314. The complaint signed by Lanns in the state prosecution was introduced in evidence over the objection of the government. In the federal court prosecu-

tion Lanns did not testify as to the value of his stolen coin collection. To overcome the thrust of the $4,000 valuation placed in the complaint in state court, the government recalled Bloedel, an Assistant County Attorney of Hennepin County, Minnesota, who testified that as such Assistant County Attorney he was responsible for the preparation of the complaint in state court; that the figure of $4,000 was inserted in the complaint and information at his direction; that he had not conferred with Roger Lanns before the preparation of the complaint and information; that he had the $4,000 figure put in the complaint at the suggestion of the appellants' attorney, Keith Kennedy, who represented them in the state court prosecution; that after the preparation of the complaint and information in accordance with Attorney Kennedy's suggestions, Bloedel talked to Mr. Lanns and told him that he had an opportunity of getting a plea of guilty in the case and that he thought he should sign the complaint, and that Lanns did so.

Appellants here assert that this amounted to the receipt of prejudicial hearsay evidence. We do not agree. Lanns never testified as to the valuation of the coins and the complaint signed by him could not, therefore, have been used to impeach him. Bloedel's testimony was competent as being beyond the scope of the hearsay rule since it was not intended to be evidence of the value of the coins, the matter asserted, but was merely designed as an explanation for the use of the $4,000 figure in the state complaint; i. e., it was designed to show that the $4,000 figure in the state complaint was not intended by the parties to be an appraisal. McCormick on Evidence, Chapter 25, § 228, p. 464, states:

> "* * * When it is proved that D made a statement to X, with the purpose of showing, circumstantially, the probable state of mind of X, such as knowledge, or motive, or to show the information which X had as bearing on the reasonableness or good faith of the subsequent con-

duct of X, the evidence is not subject to attack as hearsay."

Wigmore on Evidence, 3d Ed., Vol. VI, § 1766, p. 178, puts it this way:

"The prohibition of the Hearsay rule, then, *does not apply to all words or utterances merely as such.* If this fundamental principle is clearly realized, its application is a comparatively simple matter. The Hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, *as assertions to evidence the truth of the matter asserted.*"

See, also, Busby v. United States, 9 Cir., 1961, 296 F.2d 328, 332; Aikins v. United States, 10 Cir., 1961, 282 F.2d 53, 57; Hooper-Holmes Bureau, Inc. v. Bunn, 5 Cir., 1947, 161 F.2d 102, 106; Terry v. United States, 4 Cir., 1931, 51 F.2d 49; United States v. Sapperstein, D.C.Md., 1961, 198 F.Supp. 147, 150; United States v. Campanaro, D.C.Pa., 1945, 63 F.Supp. 811, 814. We find no error in the District Court's overruling the objection as to hearsay.

Affirmed.