**Louise LEE and Lawrence Lewis, Appellants,**

v.

**UNITED STATES of America, Appellee.**

**No. 21042.**

United States Court of Appeals Ninth Circuit.
April 5, 1967.

Robert L. Reid, Las Vegas, Nev., Robert A. Ward, San Diego, Cal., for appellants.

Edwin L. Miller, Jr., U. S. Atty., Phillip W. Johnson, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before CHAMBERS, HAMLEY and DUNIWAY, Circuit Judges.

HAMLEY, Circuit Judge:

Lawrence Lewis was convicted, after a jury trial, of the offense of knowingly concealing and facilitating the trans-

portation of illegally imported narcotics, in violation of section 2(c) of the Narcotic Drugs Import and Export Act, 35 Stat. 614 (1909) as amended 21 U.S.C. § 174 (1964). Louise Lee, tried jointly with Lewis, was convicted of the offense of aiding and abetting the concealment of the same narcotics in violation of the same statute.

On this appeal Lewis and Miss Lee raise search and seizure questions. Prior to the trial Lewis and Miss Lee moved to suppress the narcotics on which their convictions were obtained, contending that this evidence had been obtained as the result of an unlawful search and seizure. The court, after an evidentiary hearing, denied the motions on several grounds.[1] When the narcotics were offered in evidence at the trial, Miss Lee and Lewis objected on the grounds stated in their motions to suppress. Their objections were overruled and the narcotics were received in evidence.

The circumstances surrounding the search and seizure are not in dispute. On October 8, 1965 United States Customs Agent Thaine Ellis was informed by Leobardo Sandoval, a previously reliable informant, that a 1955 Ford station wagon bearing California license GNP-408 would be used to transport a quantity of narcotics into the United States from Mexico. According to Sandoval, the narcotics were to be delivered to the Logan Heights area of Chula Vista, California, which is about six miles from the San Ysidro, California port of entry. Early on October 9, 1965, Sandoval informed Agent Ellis that the station wagon would cross the boundary line after 10:00 o'clock that morning.

About 11:45 a.m. that day Ellis was informed by an officer at the San Ysidro port of entry that he had stopped the station wagon and sent it to a secondary inspection area. Ellis, who was in charge of the case, ordered that there be no search of the station wagon at that time and that it be permitted to proceed. At Ellis' direction, another customs agent, George R. Gore, followed the station wagon after it was released at the port of entry. Gore later informed Ellis by radio that he was being followed by a 1963 Buick with Nevada license plates, the Buick being occupied by a man wearing a white shirt, and a woman. Ellis told Gore over the radio to let the Buick pass him. As the Buick passed, Gore noted that its license number was C–68561, and reported this number to Ellis by radio.

Ellis was also in the vicinity in another car and, upon seeing the station wagon, discovered that it was being driven by the informant, Sandoval. Ellis pulled up beside the station wagon and told Sandoval that he was being followed by a Buick, a fact which Sandoval had not known.

Sandoval continued on with the station wagon and a little later, Ellis stopped it again and once more talked with Sandoval. The Buick was no longer following Sandoval's car. At this time Sandoval told Ellis that his instructions were to park the station wagon at Forty-Fifth and Ocean View, in the Logan Heights area of Chula Vista. Sandoval told Ellis he had been instructed to leave the keys in the vehicle and take up a position some distance away, after which someone would drive the station wagon away and return with it about an hour later so that Sandoval could drive back to Mexico.

On that same morning, October 9, 1965, Ellis had telephoned Customs Agent Paul Samaduroff for his assistance in the case and told Samaduroff that there was reliable information that a station wagon was to enter the United

1. The court held that the search and seizure were proper on three grounds, namely: (1) the officers had reasonable grounds to believe that the car in question contained narcotics, (2) the search and seizure of the car were incident to a lawful arrest, and (3) since the car was continuously under the surveillance of federal authorities, the search could be considered a valid border search. Miss Lee's motion to suppress was denied on the additional ground that she did not have standing to object to the search and seizure.

States at the San Ysidro port of entry, and was supposed to have narcotics in it. Working under Ellis' direction, Samaduroff thereafter cruised in another car in the Logan Heights area of Chula Vista, maintaining radio contact with Ellis.

Samaduroff saw the station wagon parked at Forty-Fifth and Ocean View in that area. Ellis advised Samaduroff by radio that a Buick with Nevada license plates had been following the station wagon and was in the area where the station wagon was parked. Samaduroff later saw the Buick, occupied by a man in a white shirt, and a woman, parked not far from the station wagon. He saw the man start walking towards the station wagon and reported this over the radio.

Samaduroff then parked his own car nearby. He was advised by radio that the man in the Buick had entered the station wagon. The woman occupant of the Buick began driving away in that car, and the man who had entered the station wagon began driving that vehicle in a different direction.

The station wagon stopped in front of a grocery store at Logan and Forty-Fifth, in Chula Vista. Ellis then instructed Samaduroff by radio to "pick up the Ford with occupant." Samaduroff, who was accompanied by Customs Port Investigator Prentice N. White, arrested the sole occupant of the station wagon, who turned out to be Lewis. A subsequent search of the station wagon led to the discovery of the narcotics.[2] No warrant had been issued for the arrest of Lewis, nor had a warrant been obtained for the search of the station wagon. Miss Lee, who drove away in the Buick, was arrested later. No narcotics were found in that vehicle.

Lewis contends that the district court erroneously determined, on these facts, that the search and seizure were lawful. He apparently concedes that the search and seizure were lawful if, as the district court held, they were proper incidents of a lawful arrest. He argues, however, that the arrest was not valid because Samaduroff, proceeding without an arrest warrant, did not have reasonable grounds to believe that Lewis had committed, or was committing a federal offense. Reasonable grounds were lacking, Lewis asserts, because while Ellis had informed Samaduroff that Lewis was then committing the offense of transporting narcotics, this " * * * does not fall within this category of cases. * * * " holding that information from a reliable third person is sufficient to justify arrest without a warrant.

■ If Ellis had made the arrest, he would have had reasonable grounds for doing so. We so hold in view of the information Ellis had received from a reliable informant, as supplemented by what he observed and what Samaduroff had observed and reported to Ellis over the radio. Therefore, Samaduroff, a subordinate of Ellis in the same enforcement agency, working under Ellis' direction at the time, and making the arrest at the request of Ellis and upon the basis of information supplied to him by Ellis, corroborated by what Samaduroff himself had observed, had probable cause to make this arrest.[3]

2. Lewis does not contend in this court that the search was unreasonable because it did not occur at the place and time of the arrest.

3. See Williams v. United States, 113 U.S. App.D.C. 371, 308 F.2d 326, 327; United States v. LaMacchio, 3 Cir., 362 F.2d 383, 385; Smith v. United States, 123 U.S.App.D.C. 202, 358 F.2d 833, 835; United States v. Bianco, 3 Cir., 189 F.2d 716, 719. Cf. Ferganchick v. United States, 9 Cir., 374 F.2d 559.

The court stated in *Williams:*
"We avail ourselves of the occasion to make it clear that in a large metropolitan police establishment the collective knowledge of the organization as a whole can be imputed to an individual officer when he is requested or authorized by superiors or associates to make an arrest. The whole complex of swift modern communication in a large police department would be a futility if the authority of an individual officer was to be circumscribed by the scope of his first hand knowledge of

The district court did not err in holding that the search and seizure were legal.

Miss Lee contends, in effect, that the evidence is insufficient to support her conviction of the charge of aiding and abetting Lewis in concealing the illegally imported narcotics in the station wagon. She contends that the district court therefore erred in denying her motion for judgment of acquittal.

In arguing that the evidence was sufficient to convict Miss Lee as an aider and abettor to Lewis in the concealment of the narcotics found in the station wagon, the Government correctly states that the jury could have found the facts to be as follows: Miss Lee and Lewis had driven together in the Buick from Las Vegas, Nevada to Tijuana, Mexico, arriving at Tijuana about 8:30 or 9:00 a.m. on October 9, 1965. Later that day she was a passenger in the Buick, driven by Lewis, which followed the station wagon along U.S. 101 alternate, some six miles en route from the San Ysidro port of entry to Chula Vista, California. When they arrived in Chula Vista, she remained in the Buick when Lewis got out and started walking towards the station wagon. She then drove off in the Buick.

Ellis and his colleague followed the Buick and stopped it a few blocks away. The officers got out of their vehicle and approached the Buick, whereupon Miss Lee attempted to escape in her vehicle. However, the officers gave chase in their automobile and forced her to stop. Miss Lee, who testified in her own defense, made no claim that she did not know that Ellis and his companions were officers. When Miss Lee was told by the arresting officers that her male companion had been arrested, she did not indicate surprise, but stated "I want to be with him."

Miss Lee provided a false address, a false age, and a false occupation, either at the time of arrest or at the time of trial. She testified falsely that she did not tell the officers that she had previously lived on Normandy Street in Los Angeles; testified falsely that she was not advised of her right to an attorney; and contradicted, on cross-examination, her statement, on direct examination, that she stopped in Los Angeles on the trip from Las Vegas to Tijuana.

Miss Lee was indicted for the offense of knowingly aiding and abetting Lewis in committing the offense of knowingly concealing and facilitating the transportation of narcotics unlawfully imported into the United States. The jury brought in a verdict against her of "*guilty* as charged in the Indictment in one count." (Emphasis in original.) Apparently through inadvertence, the judgment thereafter entered adjudged her guilty only of aiding and abetting the "concealment" of narcotics, nothing being said about aiding and abetting Lewis in "facilitating the transportation" of the narcotics. However, since the judgment is subject to correction to conform to the jury verdict, we will consider the sufficiency of the evidence to support the jury verdict both as to concealment and facilitating transportation.

The test to be applied in determining the sufficiency of the evidence is whether "reasonable minds could find that the evidence excludes every hypothesis but that of guilt." [4]

Applying this test, the evidence reviewed above is insufficient to support the jury finding that Miss Lee knowing-

facts concerning a crime or alleged crime.

"When the police department possesses information which would support an arrest without a warrant in the circumstances, the arresting officer, if acting under orders based on that information, need not personally or first hand know all the facts. The test, as we have said, is whether a prudent and cautious officer in those circumstances would have reasonable grounds —not proof or actual knowledge—to believe that a crime had been committed and that appellant was the offender."

4. Kaplan v. United States, 9 Cir., 329 F.2d 561, 563. See Hiram v. United States, 9 Cir., 354 F.2d 4, 6; Conway v. United States, 8 Cir., 349 F.2d 907, 910-911.

ly aided and abetted Lewis in knowingly concealing unlawfully imported narcotics in the station wagon. The narcotics were concealed under the window moulding of the door of that vehicle. There is no evidence that Miss Lee was ever closer to the station wagon than one or two blocks.

We think the evidence was also insufficient to support the jury finding that Miss Lee knowingly aided and abetted Lewis in facilitating the transportation of unlawfully imported narcotics. While the showing is exceedingly thin, perhaps the jury could infer that Miss Lee knew the station wagon contained narcotics, that she knew the narcotics had been unlawfully imported, and that she knew that Lewis intended to drive away in that vehicle, with the narcotics in it, when he alighted from the Buick. But we see no basis whatever for a jury finding that Miss Lee aided and abetted the transportation of the narcotics in the station wagon either before or after Lewis entered it.

Insofar as the evidence indicates, Miss Lee was only a passenger in the Buick, and rendered no assistance to Lewis in reaching the place where the driver of the station wagon had been instructed to park that vehicle. Lewis stepped out of the Buick and walked towards the station wagon, whereupon Miss Lee drove away in the Buick. There is no showing that her act in driving away in the Buick aided Lewis in any respect or that it was intended to. The only possibility that suggests itself is that she might have been attempting to divert the attention of customs agents in the vicinity. But there is no solid evidence to support this interpretation of her action in driving away in the Buick, nor is there any showing that she or Lewis were even aware that any law enforcement officers were in the vicinity.

For all the record shows, she may been driving the Buick on an errand of her own, intending to return when Lewis came back. In that event, her driving of the Buick was no more of an aid to him than if she had remained in it at the place where Lewis left that car. About all this evidence shows is that Miss Lee went along for the ride. Cf. Arellanes v. United States, 9 Cir., 302 F.2d 603, 606.

Miss Lee's attempt to escape gives rise to the inference that she knew something wrong was going on and that she did not want to become implicated in it. But it does not show that her attempted escape or any of her actions prior thereto, were for the purpose of aiding and abetting Lewis in transporting narcotics, or that they had that result.

Affirmed as to Lewis. Reversed and remanded as to Miss Lee, with directions to enter a judgment of acquittal as to her.