**UNITED STATES**

v.

**William Michael AUSTREW also known as Bill Davis, Harold Sapperstein and Anne Sapperstein.**

**Cr. A. No. 24648.**

United States District Court
D. Maryland.
Jan. 4, 1961.

Robert E. Cahill, Asst. U. S. Atty., United States District Court for District of Maryland, Baltimore, Md., for plaintiff.

Nathan M. Cohen, Chicago, Ill., for defendants.

R. DORSEY WATKINS, District Judge.

Defendants, named in a four count indictment returned December 9, 1958 [1] by-

---

[1] The motion to dismiss was filed March 13, 1959. The passage of time between the filing of the motion and the ruling thereon is attributable to several acceptable causes for none of which, however, is the court responsible.

a Grand Jury empanelled on December 2, 1958, on charges of violating the White Slave Traffic Act, 18 U.S.C. §§ 2421, 2422 and 2423, and aiding and abetting the violation thereof, 18 U.S.C. § 2, have filed a motion to dismiss the indictment generally, and Counts 1 and 3 thereof specifically.

The portion of the motion directed to the entire indictment alleges as grounds that:

■ 1. The indictment in question is an indictment superseding a previous indictment which was dismissed by the United States in open court after the return of the present indictment. No motions had been filed by defendants, and no claim of double jeopardy has or could have been interposed. In their memorandum in support of this motion defend-

ants concede that "the governments [sic] motivations concerning its failure to proceed with the original indictment * * * and its election to dismiss that indictment, standing alone, might not be relevant," but argue that the government thereby "recognized the invalidity of the grand jury." Assuming this to be correct[2] it clearly has no relevance as to the "validity" of the grand jury that returned this indictment. Nothing further need be said on this ground of the motion. The remaining grounds will be stated and then considered in order.

2. Defendants claim that sections 1861, 1863, 1864 and 1865 of U.S.C. Title 28[3] have been violated, in that:

(a) The clerk and jury commissioner failed to ascertain that the jurors "had resided for a period of one year within

2. The foreman of the Grand Jury who presided at the session of the Grand Jury at which the preceding indictment had been returned, and who administered oaths to the witnesses who testified, had not been a resident of Maryland for quite one year at that time. Without conceding that this would invalidate the proceedings by the remaining qualified Grand Jurors, the Government dismissed the indictment in this and another case.

3. United States Code, Title 28, § 1861:
"Any citizen of the United States who has attained the age of twenty-one years and who has resided for a period of one year within the judicial district, is competent to serve as a grand or petit juror unless—
"(1) He has been convicted in a State or Federal court of record of a crime punishable by imprisonment for more than one year and his civil rights have not been restored by pardon or amnesty.
"(2) He is unable to read, write, speak, and understand the English language.
"(3) He is incapable, by reason of mental or physical infirmities to render efficient jury service. As amended Sept. 9, 1957, Pub.L. 85–315, Part V, § 152, 71 Stat. 638."
United States Code, Title 28, § 1863:
"(a) A district judge for good cause may excuse or exclude from jury service any person called as a juror.
"(b) Any class or group of persons may, for the public interest, be excluded from the jury panel or excused from service as jurors by order of the district judge based on a finding that such

jury service would entail undue hardship, extreme inconvenience or serious obstruction or delay in the fair and impartial administration of justice.
"(c) No citizen shall be excluded from service as grand or petit juror in any court of the United States on account of race or color."
United States Code, Title 28, § 1864:
"The names of grand and petit jurors shall be publicly drawn from a box containing the names of not less than three hundred qualified persons at the time of each drawing.
"The jury box shall from time to time be refilled by the clerk of court, or his deputy, and a jury commissioner, appointed by the court.
"Such jury commissioner shall be a citizen of good standing, residing in the district and a well known member of the principal political party in the district, oposing that to which the clerk, or his deputy then acting, may belong. He shall receive $5 per day for each day necessarily employed in the performance of his duties.
"The jury commissioner and the clerk, or his deputy, shall alternately place one name in the jury box without reference to party affiliations, until the box shall contain at least 300 names or such larger number as the court determines.
"This section shall not apply to the District of Columbia."
United States Code, Title 28, § 1865:
"(a) Grand and petit jurors shall from time to time be selected from such parts of the district as the court directs so

the judicial district" prior to drawing the names and prior to placing the names in the jury box.

(b) There was a systematic failure to include persons who lived in certain geographical areas of the judicial district because of which, particularly in view of the failure to obtain a "court order" for such exclusion, the jury was not "validly drawn."

3. That "the clerk and/or the jury commissioner while in the process of determining the qualifications of the December [1958] Grand and Petit Jury obtained the services of the Federal Bureau of Investigation."

4. That the Grand Jury returning the indictment "heard only two witnesses who testified relative to this cause * * *". and that the indictment "was not obtained by the presentation of substantial material competent evidence * * *."

5. That Counts 1 and 3 fail "to allege the transportation of the girls named therein in interstate commerce * * *."

### Discussion.

■ Preliminarily, it should be noted that once an indictment has been returned by a grand jury, "the presumption is that the grand jury, the court officials, and the court properly discharged their respective duties", Carlisle v. United States, 4 Cir., 1912, 194 F. 827, 829; and "where the contrary is asserted it must be affirmatively shown." Koch v. United States, 4 Cir., 1945, 150 F.2d 762, 763.

2 (a) One year's residence.

■ Defendants contend that since, of the questionnaires sent to the twenty-three persons who were selected as grand jurors, only nine [4] contained a specific inquiry as to residence within the District of Maryland for one year, this reduced the number of qualified names in the wheel, before the drawing of the Grand Jury panel, to less than three hundred.

There was, however, no effort to prove,. or "offer of proof that the disqualified persons, if any there were, were sufficient to reduce the qualified number below 300." United States v. Meyer, 7 Cir., 1940, 113 F.2d 387, 395, certiorari denied 1940, 311 U.S. 706, 61 S.Ct. 174, 85 L.Ed. 459; United States v. Brandt, D.C.N.D. Ohio 1955, 139 F.Supp. 362, 364.

In addition to the formal insufficiency of proof, there were affirmative indicia that the entire panel met the residential requirements. At the organization of the grand and petit juries on December 2, 1958, the author of this opinion inquired of all who had been summoned to appear whether any of them had not been, on November 1, 1958, when the list of potential jurors was drawn, a resident of the District of Maryland for at least one year.[5] No affirmative response was received.

The only person interrogated on behalf of defendants in support of this portion of the motion was the foreman of the grand jury returning the indictment, who testified [6] that he had been a resident of this District all of the fifty-nine years of his life.

---

as to be most favorable to an impartial trial, and not to incur unnecessary expense or unduly burden the citizens of any part of the district with jury service. To this end the court may direct the maintenance of separate jury boxes for some or all of the places for holding court in the district and may appoint a jury commissioner for each such place.

"(b) Grand or petit jurors summoned for service at one place for holding court in a district may, if the public convenience so requires and the jurors will not be unduly burdened thereby, be directed to serve at another place in the same district."

4. Testimony showed that this number should be eleven, not nine.

5. In addition, the court inquired as to all of the other statutory provisions found in section 1861 of U.S.C. Title 28.

6. The motion to dismiss in this case was based upon some of the grounds alleged in a motion to dismiss in United States v. Suchman et al., No. 24653 Criminal, in respect of which a hearing was held on February 6, 1959 and testimony was introduced. It was stipulated that the record so made should be the record on which this motion is to be decided.

The court accordingly finds that the defendants failed to prove a noncompliance with the letter of the law as to residential requirements; that the evidence affirmatively shows that the panel in fact drawn had the required residence; and that there is no merit in this point of defendants' motion.

2 (b) Geographical exclusion.

 The testimony of the Clerk of Court and of the Jury Commissioner was that ordinarily the names of residents of the extreme Eastern and Western Counties of the state were not deposited in the wheel, and that this was done to reduce unnecessary expense, and undue burden on the citizens of any part of the District.[7] 28 U.S.C. § 1865(a). The counties, and the City of Baltimore, from which names of residents were regularly included, contain approximately eighty-five per cent of the total population of the District. The testimony of the Clerk was also to the effect that this practice had existed over many years, had been known to the various district judges, and that none of the judges had expressed any disapproval or ordered that any change be made.

Closely in point and holding that a jury, drawn on a basis much narrower than in this case, was validly constituted, is United States v. Gottfried, 2 Cir., 1948, 165 F.2d 360, 364–365, certiorari denied 1948, 333 U.S. 860, 68 S.Ct. 738, 92 L. Ed. 1139; see also United States v. Titus, 2 Cir., 1954, 210 F.2d 210, 212–213 and Yoho v. United States, 9 Cir., 1953, 202 F.2d 241, 242.

This portion of the motion is without merit.

3. Investigation of jurors by F.B.I.

The testimony affirmatively proved that no investigation of prospective jurors had been made by the Federal Bureau of Investigation or any other governmental agency. The failure of proof in support of this motion was frankly admitted in open court by counsel.[8] It therefore becomes unnecessary to consider what, if any, would have been the effect if such an investigation had been made.

4. Adequacy of evidence before Grand Jury.

 Defendants contend that the indictment in this case "was not based upon substantial evidence." A complete answer to this contention is found in Costello v. United States, 1956, 350 U.S. 359, 76 S.Ct. 406, 100 L.Ed. 397. In this case, two witnesses appeared before the Grand Jury. In Costello, it was alleged that the indictment was based upon hearsay evidence only. In sustaining the validity of the indictment the court said (350 U.S. at page 363, 76 S.Ct. at page 408):

"* * * If indictments were to be held open to challenge on the ground that there was inadequate or incompetent evidence before the grand jury, the resulting delay would be great indeed. The result of such a rule would be that before trial on the merits a defendant could always insist on a kind of preliminary trial to determine the competency and adequacy of the evidence before the grand jury. This is not required by the Fifth Amendment. An indictment returned by a legally constituted and unbiased grand jury, like an information drawn by the prosecutor, if valid on its face, is enough to call for trial of the charge on the merits. The Fifth Amendment requires nothing more."

5. Transportation in Interstate Commerce.

---

7. In the past ten years, only three trials have been held outside the City of Baltimore.

It is interesting to note that when a jury was being empanelled in Criminal 24653, counsel for defendants in that case, who had urged the alleged invalidity of "geographical exclusion", suggested that all potential jurors not residing within a few miles of Baltimore City be excused because of possible hardship. Proof of the pudding?

8. In Criminal No. 24653: see footnote 6, supra.

The First Count reads as follows:

"The Grand Jury for the District of Maryland charges:

"On or about the 13th day of July, 1957, in the District of Maryland,

"William Michael Austrew
also known as Bill Davis,
Harold Sapperstein,
and
Anne Sapperstein

did knowingly procure and obtain Capital Airlines tickets to be used by certain girls, to wit, Margaret Clara Atkins, also known as Shirley Monroe, and Gladys Germaine Moyers, also known as Betty McLean, in interstate commerce, in going to Calumet City, Illinois, for the purpose of prostitution, debauchery, and other immoral purposes, and with the intent and purpose on the part of the said William Michael Austrew, also known as Bill Davis, Harold Sapperstein, and Anne Sapperstein, to induce, entice and compel the said girls to give themselves up to the practice of prostitution and to give themselves up to debauchery and other immoral practices, whereby the said girls were transported in interstate commerce."

The Third Count is verbatim the First Count, except for the date, and reference to a third girl.

Defendants contend that these counts are fatally defective in that "The indictment fails to allege the departure point from which the tickets were to be allegedly used. It fails to allege that the girls named were to use the airline tickets in going to Calumet City, Illinois, from any point outside the State of Illinois."

■ The indictment clearly alleges the procurement in the District of Maryland by defendants of tickets to be used by certain girls "in interstate commerce,

in going to Calument City, Illinois" for purposes prohibited by the statute "whereby the said girls were transported in interstate commerce." In an indictment for a statutory offense it is generally sufficient to describe the offense in the words of the statute, as was done here. As was stated by then Judge Parker, in Wendell v. United States, 4 Cir., 1929, 34 F.2d 92, 93–94, certiorari denied sub nom. Leikin et al. v. United States, 1929, 280 U.S. 589, 50 S.Ct. 37, 74 L.Ed. 637, with his usual clarity:

"* * * If the language of the statute be held sufficient to define an element of the crime, the same language in the indictment must be held sufficient as a charge thereof."[9]

■ An indictment is sufficient if it furnishes the accused with such a description of the charge against him as will enable him to make his defense, and permit him to use his conviction or acquittal for protection against a further prosecution for the same cause. United States v. Hess, 1888, 124 U.S. 483, 487, 8 S.Ct. 571, 31 L.Ed. 516; Martin v. United States, 4 Cir., 1924, 299 F. 287, 288; Wendell v. United States, 4 Cir., 1929, 34 F.2d 92, 93; Goldberg v. United States, 8 Cir., 1921, 277 F. 211, 215; Hughes v. United States, 6 Cir., 1940, 114 F.2d 285, 288.

■ Indictments in which the broad characterization of the transaction as one in interstate commerce is found have been upheld. Wendell v. United States, supra; United States v. Richie, 3 Cir., 1955, 222 F.2d 436, 437; Weddel v. United States, 8 Cir., 1914, 213 F. 208, 210. If defendants desire a further specification of point of origin, this should be sought by a demand for a bill of particulars.

The motion is denied.

9. This language was used in holding sufficient an indictment charging that defendants did "feloniously receive and conceal" a certain automobile "moving as, and which is a part of, and which constitutes interstate commerce * * * knowing the same to have been stolen", over the objection that it did not contain a direct averment that the automobile was in fact stolen.

Counsel and the court seem to have accepted without question the sufficiency of the averment as to the interstate nature of the alleged offense.