UNITED STATES of America, Appellee,

v.

Harold SAPPERSTEIN and Anne Sapperstein, Appellants.

No. 8477.

United States Court of Appeals Fourth Circuit.

Argued Nov. 5, 1962.

Decided Jan. 8, 1963.

Norman N. Yankellow, Baltimore, Md. (Joseph Rosenthal, Baltimore, Md., on brief), for appellants.

Robert J. Carson, Asst. U. S. Atty. (Joseph D. Tydings, U. S. Atty., and Carl J. Lorenz, Jr., Asst. U. S. Atty., on brief), for appellee.

Before SOBELOFF, Chief Judge, and SOPER and J. SPENCER BELL, Circuit Judges.

SOBELOFF, Chief Judge.

The conviction of Harold and Anne Sapperstein in the United States District Court for the District of Maryland for violations of the White Slave Traffic Act (18 U.S.C.A. §§ 2421, 2422, 2423) rests chiefly upon their own statements to the F.B.I., the voluntariness and accuracy of which they do not contest. On this appeal they raise two points: first, that their extrajudicial statements were not sufficiently corroborated by independent proof of the corpus delicti, and second, that the trial judge erred in admitting testimony as to a co-defendant's statements made out of the defendants' presence. We find no merit in either contention.

The Derby Club in the Chicago suburb of Calumet City, Illinois, is a "night spot" catering to its customers' tastes in wine, women and song. Under the ownership of Amos Amadio, the Club has achieved a certain notoriety as a center for lewd entertainment and prostitution. See United States v. Amadio, 215 F.2d 605 (7th Cir., 1954), reversed per curiam 348 U.S. 892, 75 S.Ct. 218, 99 L.Ed. 701 (1955). Especially familiar with its operations was Anne Sapperstein, known in trade parlance as a "B-girl," who went to work at the Derby Club in 1957. Although she personally refrained from prostitution, her assigned duty admittedly was to serve drinks to other girls and male patrons so engaged in a back room, to "roll" customers who had become intoxicated, to sell prophylactics, and to pick the pockets of men indulging in sexual intercourse. Meanwhile, her husband, Harold Sapperstein, stayed home and lived off her earnings.

This sordid existence continued until Sapperstein was assaulted by Amadio one day. Thereupon he and his wife sought revenge by disclosing in separate written statements to the F.B.I. that in July, 1957, as they were about to leave for a vacation and family reunion in Baltimore, Maryland, Amadio and William. Austrew, his manager, suggested that, they keep their eyes open in Baltimore for fresh talent for the Club. In language vile and explicit, Amadio specified the qualities desired in the new recruits. He made it clear that prostitution was to, be within the scope of their employment and, indeed, expressed his preference for girls with past experience in brothels.. As a profit incentive, Austrew promised! the Sappersteins commissions based on the earnings of each girl sent. The confessions also related how the Sappersteins procured three teen-aged girls (one of whom was only 14) in Baltimore and! arranged their air transportation to Calumet City.

Acting upon this information, the Grand Jury for the District of Maryland handed up a four-count indictment charging the Sappersteins as well as Austrew with violations of the White Slave Traffic Act, 18 U.S.C.A. §§ 2421, 2422, 2423.. Each count cited the three named defendants as principals and as aiders and abettors, 18 U.S.C.A. § 2.[1] When the case came to trial in the District Court, the confessions of the Sappersteins were introduced in evidence against them. Among the Government's witnesses were two of the girls who had been enticed into making the interstate journey to, Calumet City. After unsuccessful motions for judgment of acquittal, the Sappersteins were found guilty, United States v. Sapperstein, 198 F.Supp. 147 (D.Md. 1961),[2] and they have appealed..

██ Of course, in order to be admissible, an extrajudicial confession must, be corroborated as to the corpus delicti.. Masse v. United States, 210 F.2d 418 (5th Cir.), cert. denied 347 U.S. 962, 74 S.Ct. 711, 98 L.Ed. 1105 (1954). Appellants concede the adequacy of proof that they arranged the interstate transportation, but argue that the Government failed to lay a sufficient foundation for

---

1. Preliminary motions to dismiss the indictment were denied, United States v. Austrew, 190 F.Supp. 632 (D.Md.1961).

2. Austrew was also convicted in a separate trial conducted by Judge Northrop. United States v. Austrew, 202 F.Supp. 816 (D.Md.1962).

the confessions by extrinsic evidence, of an intention on their part that the girls so transported should engage in prostitution. Harms v. United States, 272 F.2d 478 (4th Cir., 1959), cert. denied 361 U.S. 961, 80 S.Ct. 590, 4 L.Ed.2d 543 (1960). While that intention must be shown to have existed prior to or concurrently with the interstate transportation, it may be inferred from evidence of the nature of the destined environment and the subsequent conduct of the parties. Athanasaw v. United States, 227 U.S. 326, 33 S.Ct. 285, 57 L.Ed. 528 (1913); Van Pelt v. United States, 240 F. 346 (4th Cir., 1917); United States v. Boyette, 299 F.2d 92 (4th Cir., 1962); United States v. Austrew, 202 F.Supp. 816 (D. Md.1962).[3]

■ Such an inference was drawn here by the District Court and, we think, with sound justification. Wholly apart from the confessions, and prior to their introduction, two of the victims gave testimony pertaining to their conversations in Baltimore with the Sappersteins, the degenerate nature of the Derby Club with its back-room brothel, the Sappersteins' close association with the management, the Club's policy of encouraging its "B-girls" and "strip-dancers" to prostitute themselves there on a profit-sharing basis, its substantial financial investment in the transportation of the Baltimore recruits, and the actual performance by the latter of obscene dances and acts of sexual intercourse with male employees and patrons shortly after arrival in Calumet City. This testimony, coupled with documentary proof that the Sappersteins purchased the airplane tickets in Baltimore with money wired to them for that purchase by Austrew, far exceeds the minimal corroboration of guilty knowledge required to support the extrajudicial confessions.

■ It is no answer that only one girl in fact became a Derby Club prostitute, see United States v. Marks, 274 F.2d 15, 18–19 (7th Cir., 1959), and authorities cited therein, for it was enough to show that the environment into which the victims were brought "would necessarily and naturally lead to a life of debauchery of a carnal nature * * *." Athanasaw v. United States, 227. U.S. 326, 33 S.Ct. 285, 57 L.Ed. 528 (1913): cf., Cleveland v. United States, 329 U.S. 14, 67 S.Ct. 13, 91 L.Ed. 12 (1946); United States v. Lewis, 110 F.2d 460 (7th Cir.), cert. denied 310 U.S. 634, 60 S.Ct. 1077, 84 L.Ed. 1404 (1940).

The second contention relates to the victims' testimony concerning statements made to them by Austrew upon their arrival in Illinois that their jobs entailed prostitution. As further indication that the enterprise was conceived for an illegal purpose, the testimony was introduced over appellants' vigorous objections that such statements were made in their absence and constituted hearsay. But such a theory disregards the prima facie proof that Austrew acted in concert with the Sappersteins in charting every detail of the proscribed transportation. When the challenged declarations came to light at the trial, Austrew had already been identified as the one who wired the money to the defendants for the tickets, who spoke to them on the telephone just before the flights, and who appeared in accordance with their arrangements to meet the girls at the airport.

■ Since Austrew's utterances were made while driving from the airport with the new arrivals to the Derby Club, obviously the contemplated final step in furtherance of the common objective, what he then said may be considered part of the res gestae and a

3. See also Jorado v. United States, 158 F. 2d 509 (1st Cir., 1946); United States v. Reginelli, 133 F.2d 595 (3rd Cir.), cert. denied 318 U.S. 783, 63 S.Ct. 856, 87 L.Ed. 1150 (1943); Pine v. United States, 135 F.2d 352 (5th Cir.), cert. denied 320 U.S. 740, 64 S.Ct. 40, 88 L.Ed. 439 (1943); United States v. Marks, 274 F. 2d 15 (7th Cir., 1959). Cf., United States v. Amadio, 215 F.2d 605 (7th Cir., 1954), reversed per curiam on other grounds, 348 U.S. 892, 75 S.Ct. 218, 99 L.Ed. 701 (1955).

circumstantial link evidencing appellants' state of mind in arranging the transportation. Pinkerton v. United States, 328 U.S. 640, 647, 66 S.Ct. 1180, 90 L.Ed. 1489 (1946) ; United States v. Flynn, 216 F.2d 354, 360–361 (2d Cir., 1954), cert. denied 348 U.S. 909, 75 S.Ct. 295, 99 L.Ed. 713 (1955) ; United States v. Copeland, 295 F.2d 635, 637 (4th Cir., 1961), cert. denied 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388 (1962) ; Washington v. United States, 275 F.2d 687, 690 (5th Cir., 1960) ; Garber v. United States, 145 F.2d 966, 969 (6th Cir., 1944) ; Braatelien v. United States, 147 F.2d 888, 893 (8th Cir., 1945). See Wigmore, Evidence, § 1789 (3d ed. 1940) ; McCormick, Evidence, § 228, pp. 463 et seq. (1954). As such, they were admissible under the time-honored exception to the hearsay rule "that a declaration made by one conspirator, in furtherance of a conspiracy and prior to its termination, may be used against the other conspirators." Delli Paoli v. United States, 352 U.S. 232, 236–239, 77 S.Ct. 294, 297–298, 1 L.Ed.2d 278 (1957) ; Lutwak v. United States, 344 U.S. 604, 617–619, 73 S.Ct. 481, 97 L.Ed. 593 (1953) ; Blumenthal v. United States, 332 U.S. 539, 559–560, 68 S.Ct. 248, 92 L.Ed. 154 (1948) ; Hitchman Coal & Coke Co. v. Mitchell, 245 U.S. 229, 249, 38 S.Ct. 65, 62 L.Ed. 260 (1917).[4] Since one member of a conspiracy is in law an agent of the others, Lutwak v. United States, supra, his declarations as

related by a third-party witness are binding even upon those co-defendants who were not present during the conversations. Lutwak v. United States, supra ; Clune v. United States, 159 U.S. 590, 16 S.Ct. 125, 40 L.Ed. 269 (1895).[5]

 It is true that the co-conspirators' exception cannot be invoked without a showing that the declarant was presently engaged in promoting the joint criminal enterprise. But where, as here, such a showing has been made, the principle is not rendered inapplicable merely because the accused has not been formally indicted for conspiracy. Sprinkle v. United States, 141 F. 811, 815–818 (4th Cir., 1905) ; Hilliard v. United States, 121 F.2d 992, 999 (4th Cir.), cert. denied 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503 (1941) ; Carpenter v. United States, 264 F.2d 565, 572 (4th Cir.), cert. denied 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959). This much was made clear by Judge Learned Hand in United States v. Olweiss, 138 F.2d 798, 799 (2d Cir., 1943), cert. denied 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047 (1944), where he said : "The notion that the competency of the declarations of a confederate is confined to prosecutions for conspiracy has not the slightest basis ; their admission does not depend upon the indictment, but is merely an incident of the general principle of agency that the acts of any agent, within the scope of his authority, are competent against his principal."

4. The co-conspirators' exception has been applied in this circuit in Sprinkle v. United States, 141 F. 811 (4th Cir., 1905); Backun v. United States, 112 F.2d 635 (4th Cir., 1940); Hilliard v. United States, 121 F.2d 992 (4th Cir.), cert. denied 314 U.S. 627, 62 S.Ct. 111, 86 L.Ed. 503 (1941); Carpenter v. United States, 264 F.2d 565 (4th Cir.), cert. denied 360 U.S. 936, 79 S.Ct. 1459, 3 L.Ed.2d 1548 (1959); United States v. Copeland, 295 F.2d 635 (4th Cir., 1961), cert. denied 368 U.S. 955, 82 S.Ct. 398, 7 L.Ed.2d 388 (1962). Of special interest are the White Slave cases of Krulewitch v. United States, 336 U.S. 440, 69 S.Ct. 716, 93 L.Ed. 790 (1949); Hilliard v. United States, supra; United States v. Sorrentino, 78 F.Supp. 425 (M.D.Pa. 1948), affirmed 175 F.2d 721 (3d Cir.,

1949), cert. denied 338 U.S. 868, 70 S.Ct. 143, 94 L.Ed. 532 (1949).

5. See also Fowler v. United States, 242 F.2d 860 (5th Cir., 1957); United States v. Bucur, 194 F.2d 297 (6th Cir., 1952); United States v. Iacullo, 226 F.2d 788 (7th Cir., 1955), cert. denied 350 U.S. 966, 76 S.Ct. 435, 100 L.Ed. 839 (1956); Cwach v. United States, 212 F.2d 520 (8th Cir., 1954); Ebeling v. United States, 248 F.2d 429 (8th Cir.), cert. denied 355 U.S. 907, 78 S.Ct. 334, 2 L. Ed.2d 261 (1957); Shibley v. United States, 237 F.2d 327 (9th Cir., 1956), cert. denied 352 U.S. 873, 77 S.Ct. 94, 1 L.Ed.2d 77 (1957); Briggs v. United States, 176 F.2d 317 (10th Cir., 1949), cert. denied 338 U.S. 861, 70 S.Ct. 103, 94 L.Ed. 528 (1950).

See also Garber v. United States, supra; Lee Dip v. United States, 92 F.2d 802, 803 (9th Cir., 1937), cert. denied 303 U.S. 638, 58 S.Ct. 526, 82 L.Ed. 1099 (1938), and authorities cited therein.

There being no error, the judgment below is

Affirmed.