Charles MARTIN and Paul N.
Hankish, Appellants,

v.

UNITED STATES of America,
Appellee.

Nos. 73–2485 and 73–2486.

United States Court of Appeals,
Fourth Circuit.

Argued April 7, 1975.

Decided Oct. 28, 1975.

Sterl F. Shinaberry, Charleston, W. Va. [court-appointed counsel] (Hostler, Logsdon & Shinaberry, Charleston, W. Va., on brief), for appellant Martin.

Thomas A. Livingston, Pittsburgh, Pa. (Dennis J. Clark, Pittsburgh, Pa., on brief), for appellant Hankish.

John A. Field, III, U. S. Atty. (Robert B. King, and Ray L. Hampton, II, Asst. U. S. Attys., on brief), for appellee.

Before BUTZNER, RUSSELL and WIDENER, Circuit Judges.

WIDENER, Circuit Judge:

Appellants Charles Martin and Paul Hankish were jointly indicted and tried, and were convicted by a jury for conspiracy to violate Title 26 U.S.C. § 5861(b)(c)(d)(e) and (f) in that they conspired to make, receive, possess and transfer an unregistered destructive device. They were also convicted of two separate substantive offenses of possession of non-registered destructive devices in violation of 26 U.S.C. § 5861(d) and 5871.[1]

They have raised a number of issues regarding the trial. Of these, we consider here: (1) Whether the court erred

---

1. The first count of the indictment charged the appellants with the conspiracy count in violation of Title 18, United States Code, Section 371. Counts 2 and 4 charged the appellants with possession of destructive devices made without the payment of the making tax, contrary to Title 26, United States Code, Sections 5861(c) and 5871. In Counts 3 and 5, the appellants were charged with the possession of non-registered destructive devices, in violation of Title 26, United States Code, Sections 5861(c) and 5871. Prior to commencement of the trial, the government moved to dismiss counts 2 and 4 of the indictment. The motion was granted and the appellants were subsequently found guilty on the three remaining counts.

in refusing to poll the jury in regard to an allegedly prejudicial newspaper article appearing in the local press; (2) Whether the trial court committed error in admitting as substantive evidence prior inconsistent statements of a government witness, which statements tended to incriminate the defendants. While we find no merit in the first contention, we reverse the judgment of the district court on the second ground and remand for a new trial. We have examined appellants' other assignments of error and find them to be without merit.

The convictions here stem from the firebombing of a tavern in Glenwood, West Virginia during September 1971. The firebombing was alleged to have been carried out by means of two incendiary devices, commonly referred to as Molotov Cocktails, which were thrown through a window of the tavern.

The government offered evidence which tended to show that Hankish hired Raymond Crist and James Meadows to carry out the alleged attack. It also tended to show that Martin was enlisted in the scheme as a driver. The substance of the charges against the defendants arises from the fact that neither firebomb involved in the attack was registered as required by law.

The first issue concerns the district court's refusal to poll the jury as to an article appearing in a Charleston newspaper on the third day of the trial. In addition to summarizing some of the testimony from the previous day, the article described Martin as an associate of Hankish and went on to state that "Hankish . . . is currently serving a ten-year prison term for his conviction earlier this year stemming from the 1967 beer hijacking case." Defense counsel immediately after publication of the article requested the trial judge to interrogate the jurors individually to determine whether any of them had read the article. The district judge declined to do so.

In *United States v. Hankish*, 502 F.2d 71 (4th Cir. 1974), we held that where the jury was exposed to such prejudicial

information the court was obligated to determine the extent and effect of the infection and failure to do so constituted error. We noted, however, that not " . . . every newspaper article appearing during trial requires such protective measures. Unless there is substantive reason to fear prejudice, the trial judge may decline to question the jurors." 502 F.2d at p. 77.

■ In the instant case, we are of opinion there was no error in the ruling of the district court. The article in question carried no material facts which had not already been brought to the jury's attention. Counsel for Hankish had asked the jurors on voir dire:

"If you would determine during the course of this trial that Paul Hankish is presently a prisoner confined for a period of ten years on an offense of buying stolen beer, would that influence you in deliberating as far as his testimony is concerned in this case?"

In light of the question asked the jurors on voir dire, we are convinced that the newspaper article contained no new information which could be deemed prejudicial to the appellants' cause. Thus, we find no merit in their contentions on this point. We find persuasive our holding in *United States v. Wenzel*, 311 F.2d 164 (4th Cir. 1962). See especially p. 169–70. Since the newspaper article here contained nothing not already brought to the attention of the jury at the trial, the trial judge was under no obligation to make inquiry about it.

We next consider the assertion that the district court erred in admitting as substantive evidence certain statements of one James Meadows, an alleged coconspirator, who appeared as the government's first witness. Meadows was originally interviewed on November 9, 1972 by federal agents investigating the firebombing of the Glenwood tavern. He was later questioned on April 10, 1973. On both occasions, he executed signed highly prejudicial statements implicating Hankish and Martin, the latter of which was given under oath.

When called as the government's first witness at trial, however, Meadows testified that he had never had any discussion with Hankish about doing any sort of job for him. Moreover, he stated that Martin had not been present at the scene of the firebombing nor was he in any way involved in the attack. Rather, Meadows said that he had been approached by a man named Frank who offered him $500 to throw the two firebombs into the tavern and that he and Crist had acted alone.

After eliciting this testimony, the government pleaded surprise and interrogated Meadows, over the objection of defense counsel, as to his prior statements.[2] Defense counsel repeatedly requested that the jury be cautioned that Meadows' prior statements as brought out by the government's cross-examination were not to be considered as substantive evidence. The district court denied each of these requests.

■ We begin with the observation that the prior statements of Meadows were hearsay and, as such, have traditionally been, as they are now, admissible solely for purposes of impeachment. E. g. *Bridges v. Wixon,* 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); *Southern Railway v. Gray,* 241 U.S. 333, 337, 36 S.Ct. 558, 60 L.Ed. 1030 (1916). The government, however, urges that the substantive use of these prior statements was proper in this case since it claims the dangers against which the hearsay rule is designed to protect are largely nonexistent where, as here, the witness testifies at trial.[3]

■ The government's view has received support from some commentators, and was, at one time, embodied in Rule 801 of the proposed Federal Rules of Evidence. Those advocating admissibility premise their position on the assertion that basically the purpose of the hearsay rule has been satisfied and psychologically the one statement is as useful to consider as the other. See 3A *Wigmore on Evidence* § 1018 (Chadbourn rev. 1970). The traditional rule which restricts the use of such evidence to impeachment purposes has even been described as pious fraud, artificial, basically misguided, mere verbal ritual, and an anachronism that still impedes our pursuit of the truth. See Morgan, *Hearsay Dangers and the Application of the Hearsay Concept,* 62 Harv.L.Rev. 177, 193 (1948), and authorities cited in *United States v. DeSisto,* 329 F.2d 929, 933 (2d Cir. 1963). The defenders of the conventional learning are equally emphatic. They point out that admitting such statements as substantive evidence destroys effective cross-examination and gives to the statement a special indestructible status, *Ruhala v. Roby,* 379 Mich. 102, 150 N.W.2d 146 (1967); and that such use would increase both temptation and opportunity for the manufacture of evidence and lead to affirmative evidence being obtained by third degree methods, *State v. Saporen,* 205 Minn. 358, 285 N.W. 898 (1939). And Justice Douglas, in *Bridges,* 326 U.S. p. 151, n. 6, 65 S.Ct. 1443, among others, warns of the deep-rooted policy of the law toward hearsay evidence.

Yet, despite the criticism of some of the commentators, the courts have justifiably and steadfastly refused to admit such statements as substantive evidence. A vast majority of the jurisdictions have adhered to the traditional view that prior self-contradictions are not to be treated as having independent testimonial

---

**2.** Meadows explained these prior statements by stating that he had been promised that his bail would be lowered if he cooperated with the government agents. He testified that he knew the agents were out to get Hankish and that he further knew they would believe anything he told them about Hankish. He had included Martin in his story, he said, simply because he did not like Martin.

**3.** The fact situation in the *Bridges* case is nearly identical with that here. In *Bridges,* the witness, O'Neil, was present and testified at the hearing. His unsworn inconsistent statements had been taken down by a stenographer who read them into the record.

value, 3A *Wigmore on Evidence* § 1018 (Chadbourn rev. 1970), *Wharton's Criminal Evidence,* 13th Ed., Torcia, 1972, § 265, an exception being the Second Circuit. See *United States v. DeSisto,* 329 F.2d 929 (1964), cert. den. 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964), and its progeny.

The evolution of what Wigmore refers to as the Second Circuit view has not resulted in a broad exception to the orthodox rule, however. Even under this view, prior inconsistent statements of a witness available for cross-examination may be received as affirmative proof only when made at a former trial or before a grand jury. *United States v. Mingoia,* 424 F.2d 710, 713 (2d Cir. 1970); *United States v. Insana,* 423 F.2d 1165, 1170 (2d Cir. 1970), cert. den., 400 U.S. 841, 91 S.Ct. 83, 27 L.Ed.2d 76 (1970). This exception has been "rigorously limited" to these very precise situations. *United States ·v. Cunningham,* 446 F.2d 194, 197 (2d Cir. 1971). That court has refused to go further "because [it entertained] doubts both as whether [it could], see *Bridges v. Wixon,* 326 U.S. 135, 153–154, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), and as to whether, having in mind the ease of putting thoughts into the minds of prospective witnesses, [it] should."[4]

The government would have us go beyond the Second Circuit view, however, and admit the statements of the witness Meadows on the basis of our decision in *United States v. Payne,* 492 F.2d 449 (4th Cir. 1974). We are of opinion that our decision in that case does not support the government's position.

It is true in *Payne* the unsworn partial statement of a government witness was introduced as substantive evidence following his failure to recall either the events set forth in the statement or the fact of the taking of the statement. Yet, the witness in that case had had an opportunity at an earlier court proceeding to challenge the fact of the interview or what was allegedly discussed. We there noted that the witness' " . . . attention was directed to his statement, . . . he had ample opportunity to disavow the fact of the interview and what was discussed, or to assert his lack of recollection of all or any part of it, and . . . his silence, in the presence of the court [at the previous hearing], amounted to tacit admissions that the interview took place, that he remembered it and that he acknowledged the correctness [of its substance]." 492 F.2d at 452. We were there of opinion that on such facts the statement was within the confines of the Second Circuit view regarding admissibility.

The instant case differs in a number of significant respects. Here, Meadows had had no opportunity to repudiate his earlier statement in open court; when given the chance to do so at trial, he did not plead lapse of memory, but rather recanted entirely the statements offered by the government, testifying that they had been given in exchange for a reduction in bail. On the basis of these facts, we are unable to conclude that Meadows ever tacitly or otherwise acknowledged the correctness of his earlier statements in open court. To the contrary, he expressly repudiated them. Thus, we are of opinion that this case cannot be brought within the *Payne* decision.

Moreover, it is persuasive that under Rule 801 of the Federal Rules of Evidence the prior statements of Meadows would have been admissible only for purposes of impeachment and not as sub-

---

4. *Taylor v. Baltimore & Ohio RR Co.,* 344 F.2d 281, 283 (2d Cir. 1965).

The danger to which the Second Circuit alluded is exemplified in this case. The victim of the firebombing, a certain Dean, when interviewed by the government agents investigating the incident, signed a statement which read in part, "I feel that the firebombing was done to put me out of business and I feel that Paul Hankish may have had something to do with it." At trial, Dean freely admitted that at the time the statement was taken, he had never heard of Hankish and that the part concerning him was inserted at the suggestion of the government agent who prepared the statement for his signature.

stantive evidence. The pertinent part of Rule 801 provides:

"(d) A statement is not hearsay if—

(1) The declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is (A) inconsistent with his testimony, and was given under oath subject to the penalty of perjury at a trial, hearing, or other proceeding, or in a deposition."

The first statement of Meadows fails to meet any of the requirements of the new rule. It was neither given under oath nor taken during a trial, hearing, or proceeding. While it is true that the second statement was under oath, it also was not made at a trial, hearing, or other proceeding. Rather, it was merely made before two investigating officers, and also would fail to qualify as substantive evidence under Rule 801 as adopted by Congress.

We are, of course, cognizant of the fact that Meadows' earlier statements might have been admissible under the original draft of Rule 801, which is reproduced in 51 F.R.D. at 413, and that Congress had not enacted the new rule at the time of trial. Yet, that proposed rule was never adopted and until such time as it might have been, the trial court was bound by the decisions on the subject.

Thus, given our basic adherence to the traditional hearsay rule, see *United States v. Hankish,* 502 F.2d 71 (4th Cir. 1974), the introduction of the Meadows' statements as substantive evidence was error. We therefore reverse and remand the case for a new trial.

*Reversed and remanded for a new trial.*