**Ricardo JOYNER, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Mosely GAINES, Appellant,**

v.

**UNITED STATES of America, Appellee.**

**Nos. 75–1929, 75–1930.**

United States Court of Appeals, Fourth Circuit.

Argued April 5, 1976.

Decided Jan. 24, 1977.

Myer Koonin, Washington, D.C., for Ricardo Joyner.

Michael E. McKenzie, Fairfax, Va., for Mosely Gaines.

Stephen R. Pickard, Asst. U. S. Atty., Alexandria, Va. (William B. Cummings, U. S. Atty., Alexandria, Va., on brief), for appellee in Nos. 75–1929 and 75–1930.

Before BOREMAN, Senior Circuit Judge, WIDENER, Circuit Judge, and HADEN, District Judge.*

HADEN, District Judge:

Ricardo Joyner and Mosely Gaines were convicted of distributing cocaine in violation of 21 U.S.C. § 841(a), as amended.

■ Joyner asserts on appeal that the evidence adduced at trial established entrapment as a matter of law. We do not agree. Viewing the evidence in a light most favorable to the United States, we are of the opinion that the issue of entrapment was a proper question for the jury. Additionally, the District Court's charge adequately presented this issue to the jury[1] and Joyner, thereby, had full opportunity to argue this defense. Therefore, we affirm the Joyner conviction.

Defendant Gaines' contentions center around certain out-of-court statements made by Joyner to an undercover agent which were inconsistent with his testimony on direct examination and which implicated Gaines as a supplier of the cocaine. Gaines claims that the court (1) abused its discre-tion in refusing to grant his motion for a severance; and (2) committed prejudicial error in failing to caution the jury that Joyner's out-of-court statements could not be considered substantively against Gaines, but only by way of impeachment of the declarant.

Joyner's extrajudicial statements came before the jury as follows: Immediately following direct examination of Joyner by his counsel, Gaines' attorney interrogated Joyner about his client's involvement. Joyner testified that Gaines was not involved in the sale of the cocaine and generally described Gaines to be an innocent bystander. On cross-examination, the government asked Joyner whether it was true that he had told a special FBI agent that he had obtained his cocaine from Gaines and that Gaines' sources had "dried up." Joyner admitted making the statements, but testified that he had intentionally lied to the FBI agent.

■ Under similar facts, this Court has observed that such cross-examination was proper for impeachment purposes. See *Martin v. United States,* 528 F.2d 1157, 1159 (4th Cir. 1975) citing *Bridges v. Wixon,* 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945). Further, since Joyner elected to testify and was available for cross-examination, Gaines, likewise, was not deprived of any Sixth Amendment rights. See *Nelson v. O'Neil,* 402 U.S. 622, 91 S.Ct. 1723, 29 L.Ed.2d 222 (1971). Accordingly, there is no support for the contention that the District Court abused its discretion in refusing to grant a motion for severance. Compare, *United States v. Truslow,* 530 F.2d 257 (4th Cir. 1975).

■ Joyner's extrajudicial remarks to government agent King, acknowledged by Joyner but claimed by him at trial to be untrue, amount to what are commonly re-

---

* United States District Judge for the Northern and Southern Districts of West Virginia sitting by designation.

1. The "entrapment" instruction given by the court was virtually identical to that found in Devitt & Blackmar, Federal Jury Practice and Instructions § 13.13 (1975 Pocket Part). As noted in *United States v. Pollard,* 483 F.2d 929 (8th Cir. 1973), *cert. denied,* 414 U.S. 1137, 94 S.Ct. 882, 38 L.Ed.2d 762 (1974), this instruction has been approved "time and time again." *Id.* at 932.

ferred to as prior inconsistent statements.[2] The long-accepted rule in American courts has been that prior inconsistent statements are not to be treated as having any substantive or independent testimonial value.[3] Consequently, such have been admitted solely for impeachment purposes, and it has been required that the jury should be so instructed. 3A Wigmore, Evidence § 1018 (Chadbourn rev. 1970); 2 Torcia, Wharton's Criminal Evidence § 468 (1972); *Bridges v. Wixon,* 326 U.S. 135, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); but compare *United States v. De Sisto,* 329 F.2d 929 (2nd Cir. 1964), *cert. denied,* 377 U.S. 979, 84 S.Ct. 1885, 12 L.Ed.2d 747 (1964).

 This rule, however, is neither sacrosanct nor ineluctably applied. Where such statements have affirmative testimonial value due to the invocation of another evidentiary rule, then the mere fact that they are introduced in the form of a prior inconsistent statement does not limit their admissibility to impeachment purposes only.[4] Such is the case here, where Joyner's statements to King are clothed with independent testimonial value as to Gaines by virtue of the application of the common law coconspirator rule.[5] This rule provides that all relevant statements made by coconspirators during the pendency and in furtherance of a conspiracy are admissible as substantive evidence against all parties to the conspiracy. *United States v. Nixon,* 418 U.S. 683, 701, 94 S.Ct. 3090, 41 L.Ed.2d 1039 (1974); *United States v. Curry,* 512 F.2d 1299, 1302 (4th Cir. 1975); *United States v. Sapperstein,* 312 F.2d 694, 698 (4th Cir. 1963).[6] This rule applies although the government severed the conspiracy counts against Joyner and Gaines and elected to proceed only on the substantive charge of unlawful distribution of cocaine. *United States v. Sapperstein, supra.*[7]

**2.** There remains some doubt among courts and commentators as to whether a prior inconsistent statement, made while not under oath, constitutes hearsay when presented to the original declarant while he is on the stand. *Bridges v. Wixon,* 326 U.S. 135, 153, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945), holds it to be. Wigmore contends that the hearsay rule is not offended because the original declarant is present, on the witness stand, and available for cross-examination. 3A Wigmore, Evidence § 1018 (Chadbourn rev. 1970). See also 5 Wigmore, Evidence §§ 1361–1418 (Chadbourn rev. 1974), which, in addition to stating that the bases of the hearsay rule are the rights of cross-examination and confrontation of the declarant, intimates that hearsay requires reiteration of a statement by a party *other* than the declarant.

**3.** It is to be noted that the Federal Rules of Evidence made effective July 1, 1975, have no application to the evidentiary problems presented in this appeal.

**4.** Compare *Martin v. United States,* 528 F.2d 1157 (4th Cir. 1975), which characterized the application of the prior inconsistent statement rule as "steadfast." *Martin* is distinguishable, however, in that the coconspirator in that case made the statements while in custody, making them post-conspiracy in point of time and thereby placing them outside the scope of the coconspirator rule. See, *infra.*

**5.** During its case-in-chief, the U.S. Attorney attempted to question Special Agent King on direct examination concerning these prior statements. Although these statements were admissible against Gaines at this time under the coconspirator exception to the hearsay rule, the court wisely sustained an objection to the questioning due to *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). *Bruton* held that the admission of an out-of-court statement by a co-defendant when the co-defendant does not take the stand denies the defendant his Sixth Amendment right of confrontation. Of course, when Joyner subsequently took the stand, the *Bruton* objection was no longer seasonable.

**6.** There is likewise ambiguity as to whether the coconspirator rule is a "time honored exception to the hearsay rule," *United States v. Sapperstein,* 312 F.2d 694, 698 (4th Cir. 1963), or an independent evidentiary principle. This academic argument has been simplified by the adoption of the Federal Rules of Evidence. *Rule* 801(d)(2)(E) now plainly provides that "[a] statement is *not* hearsay if . . . [t]he statement is offered against a party and is . . . a statement by a coconspirator of a party during the course and in furtherance of the conspiracy." (Emphasis supplied.)

**7.** This rule applies even if the defendant was not indicted for conspiracy. *United States v. Sapperstein, supra.* The rationale for this is explained by Judge Learned Hand in *United States v. Olweiss,* 138 F.2d 798, 800 (2nd Cir. 1943), *cert. denied,* 321 U.S. 744, 64 S.Ct. 483, 88 L.Ed. 1047 (1944), wherein he stated that:

"The notion that the competency of the declarations of a confederate is confined to prosecutions for conspiracy has not the slightest basis; their admission does not depend upon

In order to invoke the coconspirator rule, it is necessary to demonstrate by substantial evidence, other than the statements in question, a prima facie case of conspiracy. *United States v. Nixon, supra* at 701 n. 14, 94 S.Ct. 3090; *Glasser v. United States,* 315 U.S. 60, 74–75, 62 S.Ct. 457, 86 L.Ed. 680 (1942); *United States v. Vaught,* 485 F.2d 320 (4th Cir. 1973).[8] The record persuades us that the government met this burden. Special Agent King testified that Gaines and Joyner arrived together at the house and went upstairs to a private room where the sale occurred; that Joyner placed a bag containing a powdery substance on a bed and stated that it was of good quality; that, when King inquired if the price per ounce would go down if he bought the cocaine in larger quantities, both Gaines and Joyner replied that it would; that Joyner took fourteen hundred dollars from King; and that Gaines helped to complete the transaction by making change. Additionally, there was testimony that Gaines was near enough to Joyner to see and hear everything that transpired.[9]

To avoid the application of the coconspirator rule, Gaines' attorney argues that Joyner's statements were obviously post-conspiracy in point of time. In support of this contention, counsel relies upon the facts that Joyner made the statements to King some time after the October 9, 1974 sale; that no other sales occurred after that date; and that no other evidence was produced to implicate Gaines. In fact, the government had no further contacts with Gaines after the sale.

Nevertheless, the law is clear that once a conspiracy is established, it is presumed to continue until its termination is affirmatively shown. *United States v. Cirillo,* 468 F.2d 1233, 1239 (2nd Cir. 1972). As stated in the recent case of *United States v. Blackshire,* 538 F.2d 569 (4th Cir. 1976):

> "[t]he mere lapse of several months between the last overt act and the conversation did not in itself establish that the statements were made after the conspiracy ended . . . ." *Id.* at 571.

Since there was no showing that the conspiracy ended or that Gaines withdrew from the conspiracy, on review we must conclude that the conspiracy was ongoing and that the coconspirator rule is applicable.

Therefore, because Joyner's statements were admissible substantively against Gaines, the trial court did not err in failing to limit the jury's consideration of them.

For the reasons stated, the conviction of Mosely Gaines is affirmed.

*AFFIRMED.*

---

the indictment, but is merely an incident of the general principle of agency that the acts of any agent, within the scope of his authority, are competent against his principal."

**8.** The contention that the conspiracy must be shown beyond a reasonable doubt was rejected in *Carbo v. United States,* 314 F.2d 718 (9th Cir. 1963), *cert. denied,* 377 U.S. 953, 84 S.Ct. 1626, 12 L.Ed.2d 498, *reh. denied,* 377 U.S. 1010, 84 S.Ct. 1902, 1903, 12 L.Ed.2d 1058 (1964).

**9.** Although the government's evidence is circumstantial in nature, due to the secretive nature of the crime itself, a conspiracy may be demonstrated by circumstantial evidence alone. *Glasser v. United States,* 315 U.S. 60, 80, 62 S.Ct. 457, 86 L.Ed. 680 (1942).